12 CV 05763
(SHS)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rashaad Donnell Guerrero

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

FJC Security Services Inc;

Local 32BJ Seiu

_____

_____

_____

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**COMPLAINT**

Jury Trial:  ☑ Yes   ☐ No
(check one)

Amended

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 10/1/12

**I.     Parties in this complaint:**

A.     List your name, address and telephone number.  If you are presently in custody, include your identification number and the name and address of your current place of confinement.  Do the same for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff     Name     Rashaad Donnell Guerrero
              Street Address     1 Metropolitan Oval
              County, City     Bronx
              State & Zip Code     NY     10462   (Apt-11-F)
              Telephone Number     646-351-9897

B.     List all defendants.  You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  Attach additional sheets of paper as necessary.

*Rev. 05/2010*

Defendant No. 1     Name ___FJC Security Services Inc;___
                    Street Address ___3310 Queens Boulevard___
                    County, City ___Long Island City___
                    State & Zip Code ___NY    11101___
                    Telephone Number ___347-418-3800___

Defendant No. 2     Name ___LOCAL 32BJ Seiu___
                    Street Address ___25 West 18th Street___
                    County, City ___New York___
                    State & Zip Code ___NY   10011___
                    Telephone Number ___212-388-2062___

Defendant No. 3     Name _____
                    Street Address _____
                    County, City _____
                    State & Zip Code _____
                    Telephone Number _____

Defendant No. 4     Name _____
                    Street Address _____
                    County, City _____
                    State & Zip Code _____
                    Telephone Number _____

## II.   Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction.  Only two types of cases can be heard in federal court:  cases involving a federal question and cases involving diversity of citizenship of the parties.   Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.     What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal Questions                    ☐ Diversity of Citizenship

B.     If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? ___Labor Management Relations Act Section 301, 185 (U.S.C. 29).___

C.     If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____
Defendant(s) state(s) of citizenship ___N/A___

**III.** **Statement of Claim:**

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.   You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.   Do not cite any cases or statutes.   If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.   Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? _Melrose Job Center_ _East 161st Street Bronx_

B.   What date and approximate time did the events giving rise to your claim(s) occur? _Monday June 13th 2011 @ 10:am_

C.   Facts: _Local 32 BJ, Seiu handled my grievance in a perfunctory manner and FJC Security Services, Inc; breached the C.B.A. contract by terminating me without cause. Please see notes and documents. Fed. R. Evid._

> What happened to you?
>
> Who did what?

> Was anyone else involved?

> Who else saw what happened?

**IV.** **Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _Emotional distress and Mental anguish_

On or about March 7, 2012. I had a meeting with the **union representative** of (32B) Seiu) to discuss the arbitration hearing on March 21, 2012.

I gave Raul Garcia my state supreme court complaint. I also told Raul Garcia that my witnesses are Roshel Graham, Charmelle Tate, and Beverly Miller. I told Raul Garcia that they will testify on my behalf. Raul Garcia said that he would make sure she appear at the hearing. When the day came my witnesses never showed up. on March 21, 2012. I told Raul Garcia that it is important that my witnesses are there to testify on my behalf, and with their testimonies I will win.

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _Punitive damages, compensatory damages, back and front pay, Seniority and reinstatement._

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _1_ day of _October_, 20_12_

Signature of Plaintiff _Rahaal Donnell Guerrero_

Mailing Address _1 Metropolitan Oval Bronx New York 10462 (Apt 11-F)_

Telephone Number _(646)-351-9897_

Fax Number (_if you have one_) _____

<u>Note</u>:   All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

**For Prisoners:**

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the _Pro Se_ Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

Inmate Number _____

_Rev. 05/2010_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
———————————————————————x

DONNELL GUERRERO

                    Plaintiff,                  INDEX NO.  11402238

     -against-

                                       COMPLAINT

NEW YORK CITY HUMAN RESOURCES
ADMINISTRATION,
FJC  SECURITY SERVICES INC.

                    Defendants
———————————————————————x

The complaint of the plaintiff, Donnell Guerrero, respectfully shows and alleges as follows:

1.    The Plaintiff herein, Donnell Guerrero, is a resident of the State of New York.  Mr. Donnell Guerrero resides at 1 Metropolitan Oval  Apt. 11-F, Bronx, N.Y. 10462.

2.    The Defendant  New York City Human Resources Administration known as HRA is located at 1 Centre Street, Room 1200, New York, N.Y. 10007 and Defendant FJC Security Services, Inc. is located at 275 Jericho Turnpike, Floral Park, N.Y. 11001.

3.    Plaintiff Donnell Guerrero suffered emotionally and financially since June 22, 2011.

**4.    I filed a notice of claim with the New York City Office of the Comptroller located at 1 Centre Street, New York, N.Y. 10007.**

5.    I am suing defendants for wrongful termination and banning me from HRA city sites based on libelous and defamatory false allegations. I'm also suing for retaliation.

6.    I complained to the U.S. EEOC and brought a lawsuit against defendants in the past for harassment in Federal Court. I was told by my employer that if I get one more infraction, I will be terminated. I was wrongfully terminated and reinstated in the past.

7.    HRA Sergeant Wright told me that I was a loose cannon.  Which means I am unstable.  FJC

director told me that I was a liability.  Her name is Laurie Malloy.

8.   My employment began with FJC Security Services, Inc. on or about May of year 2006, as a Security Guard.

9.   On June 13, 2011 at HRA located at 260 East 161st Street the Melrose Center a mentally and emotionally disturbed customer refused to follow HRA's rules and wait his turn in line.

10.  HRA rules only allow customers with referrals to approach the HRA worker at the reception window without waiting in line as per HRA.

11.  As I approached the customer in a professional and calm manner, I told him about HRA rules. The customer became hostile and confrontational.

12.  This particular customer is alleged to have been recently released from prison.  He is alleged to be a convicted felon.  He also appeared to be mentally and emotionally disturbed based on his behavior.

13.  The customer became threatening and aggressive.  He invited me to go outside with him to fight.  I refused, I called a distress code over the radio unit which is a 10-13.  No HRA Police responded.  I made several 10-13 calls over the radio-unit and no HRA Police responded.

14.  The emotionally disturbed customer came towards me and he became a threat.  Several of the customers who were present came to my aid.  They tried to keep the disturbed customer from getting to me.  One of the customers that tried to help me injured his hand as he intervened.

15.  I realized that I had to defend myself because the disturbed customer was determined to physically harm me.  I had to restrain him with minimum force.  I never struck him with my fist or hurt him in anyway.

16.  I was instructed by HRA staff to remove myself from the incident which I did.  HRA Sergeant Chavis finally showed up.  HRA supervisor Ms. Miller and Deputy Director of HRA Lopez serviced this

4

disturbed client.  He was in the office for over 30 minutes.

17. The customer then left the office and went outside and got into an ambulance.  He was not
hurt and he left under his own power.  HRA encouraged him to call for EMS to make the incident
look more serious than it was.

18.  HRA Ms. Miller, Sergeant Chavis made false allegations against me.  HRA banned me from all
their city sites which is a violation of my Civil and Human Rights.  My employer FJC terminated my
employment without an investigation and HRA never investigated the incident with me being
present.

19.  HRA Ms. Miller is a case worker and she is not familiar with the security operations.  She gave
my employer Laurie Malloy a director false information.  I was banned and terminated on July 11,
2011.

20.  By reason of the facts and circumstances stated above, the defendants violated my rights by
wrongfully terminating my employment and banning me.

21.  By reason of the facts and circumstances stated above, the plaintiff has been damaged by
defendants in the sum of $ 150,000.00.  Plus interest, cost and disbursements together with any
other relief the courts finds to be just and proper.

August 5, 2011

_____
(sign)

_____
(print)

1 Metropolitan Oval Apt. 11-F
Bronx, N.Y. 10462

646-351-9897

5

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Dated: _8/11/11_____

_____
Plaintiff

## VERIFICATION

Donnell Guerrero _____, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have a read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on the information and belief and as to those matters I believe them to be true.

_____
Signature

_____
Print Name

Sworn to before me this
11 day of Aug 2011

_____
Notary Public

RICHARD B. MINOR
Notary Public, State of New York
Reg. No. 04M16147382
Qualified in New York County
Commission Expires June 5, 20__

**[Print in *black* ink all areas in bold letters. This summons *must* be served with a complaint.]**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------x

Donnell Guerrero

**[your name(s)]**                         Plaintiff(s)

- against -

New York City Human Resource Administration;
FJC Security Services Inc,

----------------------------------------------------------

**[name(s) of party being sued]**        Defendant(s)
----------------------------------------------------------x

**SUMMONS**

**Index Number**

~~11402238~~

**Date Index Number purchased**

_____, 200___

To the Person(s) Named as Defendant(s) above:

　　　PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint
of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff(s) at the address
indicated below within 20 days after service of this Summons (not counting the day of service
itself), or within 30 days after service is complete if the Summons is not delivered personally to you
within the State of New York.

　　　YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered
against you by default for the relief demanded in the complaint.

Dated: _____, 200__
　　　**[date of summons]**

**FILED**

AUG 17 2011

COUNTY CLERK'S OFFICE
NEW YORK

_____
　　　　　　　　**[sign your name]**

Donnell Guerrero
　　　　　　　　**[print your name]**

1 Metropolitan Oval Bronx,
New York 10462
Apt # 11-F        646-351-9897
**[your address(es), telephone number(s)]**

Defendant(s)　FJC Security Services Inc:　NYC Human Resources Administration
　　　　　　　275 Jericho Turnpike,　1 Centre Street, Room 1200
　　　　　　　Floral Park, NY 11001　New York, NY 10007

　　　　　　　　　　　**[address(es) of defendant(s)]**

Venue: Plaintiff(s) designate(s) New York County as the place of trial. The basis of this designation
　　　is: **[check box that applies]**
　　　☑ Plaintiff(s) residence in New York County
　　　☑ Defendant(s) residence in New York County
　　　☐ Other **[See CPLR Article 5]:** _____

7-06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 12 CV 05763

Rashadd D. Guerrero

_____

_____

_(In the space above enter the full name(s) of the plaintiff(s).)_

-against-

FJC Security Services Inc;

LocﬂL 32 BJ Seiu

_____

_____

_____

_____

_____

_(In the space above enter the full name(s) of the defendant(s).  If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an additional
sheet of paper with the full list of names.  The names listed in the above
caption must be identical to those contained in Part I.  Addresses should
not be included here.)_

**COMPLAINT**

Jury Trial:   ☑ Yes      ☐ No
              _(check one)_

RECEIVED
JUL 25 2012
PRO SE OFFICE

I.      **Parties in this complaint:**

A.      List your name, address and telephone number.  If you are presently in custody, include your
identification number and the name and address of your current place of confinement.  Do the same
for any additional plaintiffs named.  Attach additional sheets of paper as necessary.

Plaintiff       Name       Rashadd D. Guerrero
                Street Address   1 Metropolitan Oval
                County, City   Bronx
                State & Zip Code   NY   10462 (Apt 11-F)
                Telephone Number   646-351-9897

B.      List all defendants.  You should state the full name of the defendant, even if that defendant is a
government agency, an organization, a corporation, or an individual.  Include the address where each
defendant may be served.  Make sure that the defendant(s) listed below are identical to those contained
in the above caption.  Attach additional sheets of paper as necessary.

_Rev. 05/2010_

**Defendant No. 1**   Name _FJC Security Services Inc;_
Street Address _3310 Queens Boulevard_
County, City _Long Island City_
State & Zip Code _NY   11101_
Telephone Number _347-418-3800_

**Defendant No. 2**   Name _LOCAL 32 BJ Seiu_
Street Address _25 West 18th Street_
County, City _New York_
State & Zip Code _NY  10011_
Telephone Number _212-388-2062_

**Defendant No. 3**   Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

**Defendant No. 4**   Name _____
Street Address _____
County, City _____
State & Zip Code _____
Telephone Number _____

## II.   Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.   What is the basis for federal court jurisdiction? *(check all that apply)*

☑ Federal Questions            ☐ Diversity of Citizenship

B.   If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _Section 301 of the Management Relations Act (29 USC 185) Section 14C (29 USC 164(c))._

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____ N/A _____
Defendant(s) state(s) of citizenship _____

Rev. 05/2010

Humphrey V. Moore, Supra; Ford Motor
co. V. Huffman, Supra

VACA ET AL Sipes
Administrators ; Owens V. Swift
386 U.S, 171, 87 S. ct, 903
17 L.ED 842, 1967 U.S Lexis 2873

**III.    Statement of Claim:**

State as briefly as possible the facts of your case.   Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  Attach additional sheets of paper as necessary.

**A.     Where did the events giving rise to your claim(s) occur?** Melrose Job Center - East 161st Bronx

**B.     What date and approximate time did the events giving rise to your claim(s) occur?** Monday June 13th 2011. @ 10:am

**C.     Facts:** I was accused of injuring a client named Richard Vasquez. I have ~~have~~ proof that I did not injure any client. My employer ~~ctar~~ terminated me on terms that I failed to call my supervisor about this situation and said I failed to pull away from the incident as well. I have evidence that will prove these allegations False. Union refused evidence with statements that contradicted witness Stephanie Gomez's false accusations. Union attorney did not question allegations by witness Stephanie Gomez and did not accept evidence I presented to him to fight my case. The Arbitration Award was biased and corrupt. There were no investigation of my case that was in good faith. (See notes).

*(margin boxes: What happened to you? / Who did what? / Was anyone else involved? / Who else saw what happened?)*

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

emotional distress

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.  _Back pay, front pay and job back._

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this _25_ day of _July_ , 20_12_

Signature of Plaintiff    _Roshaad J Guerrero_

Mailing Address    _1 Metropolitan Oval_
                            _Bronx, NY  10462  #11-F_

Telephone Number    _646 - 351 - 9897_

Fax Number (if you have one)    _____

<u>Note:</u>    All plaintiffs named in the caption of the complaint must date and sign the complaint.  Prisoners must also provide their inmate numbers, present place of confinement, and address.

<u>For Prisoners:</u>

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the _Pro Se_ Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff:    _____

Inmate Number    _____

Rev. 05/2010

American Arbitration Association
-------------------------------------------------------x
In the Matter of Arbitration

        -between-                 RE: Case #13 300 02617 11
Rashaad D. Guerrero
     FJC Security Services Inc.
                (Employer; Hospital)

        -and-

Local 32 BJ, SEIU
                (Union)

-------------------------------------------------------x

## APPEARANCES

### For the Employer
Scott A. Weiss, Esq., Attorney
Laurie Malloy, Senior Director, OPS, HR Administration
Woofa Amoako, Supervisor
Stephanie Gomez, Security Guard

### For the Union
Raul Garcia, Esq., Attorney
Rashaad Guerrero, Grievant

## BEFORE: STEPHEN M. BLUTH, ARBITRATOR

## BACKGROUND

This grievance protests the decision of FJC Security Services Inc.(Employer) to discharge Rashaad Guerrero (Grievant). The Employer claims it had just cause to dismiss Grievant. Local 32 BJ, SEIU (Union) insists the Employer's claim is devoid of merit. It asks he be reinstated with full back pay and benefits.

The essential facts of this matter are not in dispute. At the time of his discharge Grievant was employed as a security guard assigned to a Human Resources Administration (HRA) location at 260 East 161st Street, Bronx, N.Y. On or about July 11, 2011, he was advised his employment was being terminated due to a physical altercation with a client at HRA (Joint Ex. 3). Thereafter, the Union filed a grievance on his behalf. Efforts to resolve the matter were not successful. Consequently, I was selected to hear and decide the dispute.

A hearing was held on March 21, 2012. At this hearing both parties were afforded full opportunity to adduce evidence, make oral argument and otherwise support their respective positions. Both made oral

2

closing statements, whereupon I closed the record. This Opinion and Award follows.

## ISSUE

At the hearing the parties stipulated to the following issue:

> Did FJC Security have just cause to dischargeGrievant; if not, what is the appropriate remedy?

## POSITIONS OF THE PARTIES

The Employer contends it had just cause to discharge Grievant because he was involved in a physical altercation with an HRA client on June 13, 2011. To support this claim, it cites the testimony of Security Guard Stephanie Gomez, who averred she witnessed Grievant arguing with a client. Further, the Employer asserts, Gomez explained she subsequently saw both Grievant and client cursing and swinging at one another. According to Gomez, other parties had to separate them. Thereafter, Grievant walked away from the client, who decided to chase after him. As a result, Grievant grabbed him in the neck area and threw him against the wall, according to Gomez.

Moreover, the Employer advises, as a result of this altercation the client sustained injuries. To

buttress this claim, it refers to the testimony of Grievant's supervisor, Woofa Amoako, that when he arrived at the scene, the client claimed he was in pain. Consequently, the supervisor called the EMS, which subsequently transported him to a hospital.

Additionally, the Employer reports, it provided Grievant with extensive training in how to handle physical confrontations with clients. It cites the testimony of HRA Senior Director Laurie Malloy that Grievant completed the requisite thirty-five hour FJC/HRA pre-assignment training course. The Employer points to a certificate issued to him on August 6, 2005 that indicates he had done so (Joint Ex. 4). Additionally, according to Malloy, Grievant was provided with a "Justification of Defense" memorandum that outlined how and when physical force could be used (Joint Ex. 2). Therefore, the Employer explains Grievant was well trained on how to handle situations such as that in the instant matter. In spite of that training, it stresses, he ignored protocols and engaged in a physical confrontation with a client in violation of its rules. Thus, the Employer concludes, given the training he received there is no excuse for

4

Grievant's behavior on June 13, 2011. Accordingly, it asks the grievance be dismissed.

The Union insists the Employer did not have just cause to discharge Grievant. To support this claim it cites his description of the events that transpired on the day in question. The Union avers on that day a client, Richard Vasquez, became embroiled in an argument with another client as to position on line. This occurred, it explains, because the client with a "referral" arrived at the line and took a place in front of Vasquez as was appropriate protocol. As a result, Vasquez became loud and irate and approached the other client until they were "nose to nose." According to the Union, Grievant attempted to separate both men, who, by that time, were wrestling on the ground. However, Grievant successfully separated them, it reports. Thereafter Vasquez ran towards Grievant, who attempted to restrain him by placing him in a bear hug. According to the Union, Grievant followed appropriate protocol and at no time did he swing or curse at Vasquez. In sum, the Union maintains, the only action in which he engaged was taken to protect himself and other clients. Further, the Union argues, at the hearing Grievant's account of the incident was

5

both accurate and credible. Therefore, it insists the Employer did not have just cause to terminate his employment. For that reason, it asks he be reinstated with full back pay and benefits.

## DISCUSSION AND FINDINGS

I have examined the testimony in this matter. Based on my review, I determine the Employer had just cause to discharge Grievant. This is so, I find, because Security Guard Stephanie Gomez, the only eyewitness to the events that transpired on June 13, 2011, credibly testified she saw Grievant and Vazquez engaged in an argument. According to her testimony, she heard both Grievant and client cursing at one another. Moreover, Gomez averred, she observed both men swinging at each other while others around them attempted to separate them. Thereafter, Grievant walked away from the client, who pursued and rushed towards him. At that point, Gomez related, Grievant grabbed the client in the neck area and pushed him against the wall. Soon thereafter, Supervisor Amoako arrived and took charge of the client. Gomez's testimony was clear, consistent and credible, in my opinion.

Also, Amoako, who arrived at the scene some minutes after the altercation, substantiated Gomez's version, in part. According to him, when he arrived Vasquez complained he was in pain, which led Amaoko to call the EMS and have the client taken to the hospital. Amaoko's testimony is consistent with that of Gomez, when she asserted she witnessed Grievant grab Vasquez in the neck area and push him against the wall.

Finally, I determine, Grievant did not properly handle the situation in spite of the significant training he was provided. According to Laurie Malloy of Human Resources, Grievant received five days of training with regard to confrontations with clients and the use of physical force. Further, she declared, the police department conducted monthly training that included how to handle difficult situations. Given this training, Grievant should not have made any physical contact with the client, as instructed by the material provided him at the general training session (Empl.Ex.1). That training also emphasized projecting a calm professional manner and defusing difficult situations. Grievant's actions on June 13, 2011, were not consistent with these instructions, I believe. As

a result, he exacerbated the problem at hand rather than helping to resolve it. Accordingly, based on the credible evidence adduced at the hearing, I find the Employer had just cause to discharge Grievant. As a result, the grievance is dismissed in its entirety. It is so ordered.

### AWARD

The Employer had just cause to discharge Grievant. The grievance is dismissed in its entirety.

Dated: 4/2/12

_____
STEPHEN M. BLUTH, ARBITRATOR

STATE OF NEW YORK)
                 )
COUNTY OF NASSAU )

I, Stephen M. Bluth, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is my Award.

Dated: 4/20/12

_____
STEPHEN M. BLUTH, ARBITRATOR

8

LOCAL 32BJ SEIU, AFL-CIO (FJC
SECURITY SERVICES)
Case 02-CB-081553

## Confidential Witness Affidavit

**I, Rashaad Guerrero, being first duly sworn upon my oath, state as follows:**

**I have been given assurances by an agent of the National Labor Relations Board (NLRB) that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the NLRB and will not be disclosed unless it becomes necessary to produce this Confidential Witness Affidavit in connection with a formal proceeding.**

I reside at     1 Metropolitan Oval Apt 11F, Bronx, NY 10462-6535

My telephone number (including area code) is:     646-351-9897

I was employed by:                              FJC Security Services

located at                33 -10 Queens Blvd 3rd Floor
Long Island City, NY 11101

1      I was employed by FJC Security Services, hereinafter, the Employer, as a security guard

2    from May 15, 2006 until June 22, 2011.  My job duties were to guard the floor, direct individuals

3    to buildings, and prevent and/or diffuse verbal or physical altercations.  My supervisor at that

4    location was Wolfa Amoaken.  During my employment, the Employer assigned me to work at

5    different buildings.  Prior to my termination, I was assigned to work at 260 E. 161st Street at the

6    Melrose Job Center.

7      I have been a member of Local 32BJ SEIU, AFL-CIO, hereinafter the union, since in or

8    about February 2009.  I have never been elected or appointed to any positions within the union.  I

9    attended union meetings every other Saturday from May 2009 until my termination.

**Privacy Act Statement**
The NLRB is asking you for the information on this form on the authority of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the NLRB in processing representation and/or unfair labor practice cases and related proceedings or litigation.  The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006).  Additional information about these uses is available at the NLRB website, www.nlrb.gov.  Providing this information to the NLRB is voluntary.  However, if you do not provide the information, the NLRB may refuse to continue processing an unfair labor practice or representation case, or may issue you a subpoena and seek enforcement of the subpoena in federal court.

- 1 -                              Initials   _RG_

1    On or about December 21, 2008, my Employer terminated me. My Employer accused

2    me of spreading rumors about an account manager named Miss Wells. The Employer accused

3    me of stating that Miss Wells was sexually involved with a police officer. I denied spreading

4    that rumor. In or about January 2009, I contacted the Union, and told them about my

5    termination. The Union contacted my Employer and negotiated for me to return to work.

6    However, I had to sign off on a final warning agreement. It stated that if I was to get into any

7    other kind of problem, I would be terminated.    I was reinstated in or about May 2009.

8    Once I returned to work in May 2009, I felt that the Employer began retaliating against

9    me. In or about April 2010, the Employer suspended me for one day for allegedly drinking

10   alcohol while I was in the restroom. I filed a grievance with the Union. The Union refused to

11   process my grievance to arbitration stating that it was only one day's worth of lost wages. In or

12   about May 2011, I received a write-up because I was late to work. I was late because I was

13   meeting with the Union. I filed a grievance with the Union, but the Union refused to process the

14   grievance. The Union told me not to worry about it.

15   On or about June 13, 2011, in the morning, there was an altercation between two

16   customers, names unknown, at the Melrose Job Center. One customer, referred to as customer

17   #1, believed that another customer, referred to as customer #2, skipped the line, and began

18   cursing at him. I heard the yelling and approached the customers. I approached customer #1

19   who was yelling. I attempted to explain to customer #1 that customer #2 had already been in line

20   and did not need to wait in line again. Customer #1 began yelling at me. I told him to calm

21   down. He then said to me "You are going to let him skip me like that? You are a fake cop." I

22   again told customer #1 he had to calm down.

Initials: _____

1      At this time, customer #1 walked up right next to me and asked me to go outside and

2    fight. I then called my supervisor. Customer #1 began arguing with another customer, who I

3    will refer to as customer #3. It started as a verbal argument and then turned into a physical

4    argument between customer #1 and customer #3. During this incident, Security Guard, Roshel

5    Graham appeared and asked customer #1 to calm down. Customer #1 pushed her then attacked

6    me. I was able to grab him and place him in a bear hug.

7      Additionally, Security Guard, Stephanie Gomez and Human Resources Administration

8    workers appeared on the scene. Once I had secured customer #1, Graham, Gomez, and the HRA

9    workers escorted customer #1 out of the area. Subsequently, my Supervisor, Amoaken appeared

10    at the scene and I told him what happened. Amoaken ordered me and Graham to go to the FJC

11    office and write a report. While there, I told the HRA police officer what had happened during

12    the incident. After I finished my report, I returned to work.

13      A week and a half later, on or about Wednesday June 22, 2011, at the end of my shift,

14    Amoaken told me that I had to report to the FJC headquarters the following day.

15      On or about, Thursday June 23, 2011, I reported to headquarters. I met with the Assistant

16    Director Darryl Johnson. He escorted me to the office of Senior Director of FJC, Lory Malloy.

17    Malloy asked me to explain what happened the day of the incident, June 13th. I told her what

18    happened. She told me that I was a liability. I replied that I wasn't and I didn't do anything I

19    wasn't supposed to do. The conversation with Malloy ended. At that point, Johnson escorted me

20    out of her office and told me that I was suspended indefinitely. He told me that he would give me

21    a call after the investigation.

22      That same day I went to the Union's office and filed a grievance. While there I spoke

23    and met with Lashawn Henry, the Grievance Representative. Henry called Malloy and put her

Initials: _RB_

| Case 02-CB-081553 | | 5/29/2012 |
|---|---|---|

1    on speaker phone. Malloy stated who told her that I could not return to work until the

2    investigation was completed. Henry told me that I needed to wait for the investigation to be

3    completed and the Union would begin their own investigation.

4         On or about July 7, 2011, I called Johnson to get an update about the investigation.

5    Johnson did not provide me with any update. He told me to wait for the investigation to be

6    completed.

7         On or about July 8 2011, I met with Henry at the Union office. While there, she called

8    Malloy and placed her on speaker phone. Henry asked Malloy for an update on the

9    investigation. Malloy told Henry that she had credited Stephanie Gomez's report. Henry asked

10   what specifically was important. Malloy did not respond. Henry ended the converstation

11   indicating that she would call her later.

12        On or about July 11, 2011, I received a termination letter from my Employer. The

13   Employer accused me of hitting customer #1 during the altercation. I called Henry to tell her

14   that I was terminated. She told me that the Union was going to do the best it could to fight the

15   termination.

16        I subsequently applied for unemployment, which was denied. On December 5, 2011, I

17   had my unemployment hearing. Graham and Amoaken testified on my behalf. I won my appeal

18   and received unemployment.

19        On or about March 9, 2012, I went to my Union's office, at which time, I learned that my

20   arbitration was scheduled for March 21, 2012.

21        On or about March 15, 2012, I met with the Union's Attorney Raul Garcia to prepare for

22   my arbitration hearing at his office located at 25 W. 18th Street. Present during this meeting was

23   Kyle Jigetts, my friend. When I first walked in, the first thing Garcia asked me was whether I hit

Initials:    RG

1    customer #1. I explained that I never hit him. I explained that I had reports, witnesses, and

2    statements that I wanted him to read over. I told him these were the same witnesses that were

3    subpoenaed at my unemployment hearing. I told him I wanted the same witnesses that were at

4    my unemployment hearing. Garcia disregarded what I said by beginning to talk about the

5    arbitration, how they are, that I need to talk about what is relevant and that I need to listen to

6    him. I told him I thought it was important that he listens to what I have to say because he is

7    representing me. He said that we would get to that later. He said right now I need to listen about

8    how the arbitration hearing goes. I listened to what he said. After he finished, I said now that I

9    heard what you had to say, I want to know how my witnesses are going to play into the

10   arbitration. He said that he knows about the arbitration and what is needed and that he will call

11   the witnesses. I asked him if he was going to call Graham and Amoaken because they were

12   there. He said that he would call Graham and Amoaken. I asked if he would subpoena them

13   because I think they would be scared to come in. He told me that we didn't need to subpoena

14   them and they would just come in. I asked if he would have them come in and he answered yes.

15   The meeting ended.

16        On or about March 16, 2012, I called Garcia to see if he had spoken to Graham. Garcia told

17   me that he called Graham at work, but that she could not talk to him because she could get into

18   trouble.

19        On or about March 19th, 2012 I called Garcia if everything was straight with Graham. Again,

20   Garcia said he could not get her on the phone because she was at work. I asked Garcia if he

21   could set up an appointment for Graham to talk to him. He said that either Graham comes or she

22   doesn't and that she told him that she was at work when he called and cannot talk. Garcia said

23   now listen, if she does not show up, it will be me and you in there. I told him that it is important

Initials: _____

1    that she comes in. I said she is my witness and she needs to be here. I told him that he is my

2    lawyer and that he is representing me. I asked Garcia had he told Graham about having job

3    security and being protected as a Union's member. I told Garcia it was pertinent that she comes

4    in for my case.   Garcia replied again saying that it if she didn't come then it would just be me

5    and him.

6         On or about March 21, 2012, I attended my arbitration hearing. I spoke to Garcia and asked

7    him what I needed to say and what I needed to do. He asked me where my witnesses were. I

8    replied that I thought it was his responsibility to have the witnesses come in. Further, I said that

9    Graham isn't here and I am not sure what happened, but that she was not the kind of person to

10    not show up because she was at the unemployment appeal hearing. I asked him to adjourn the

11    case so she would be able to come. Garcia told me that we need to proceed with the arbitration

12    because it is just me and him. I saw Amoaken at the arbitration but he testified on behalf of the

13    Employer.

14         After the conclusion of the arbitration, Garcia told me that I did good and that we would have

15    to wait thirty days for a decision. I replied that I was not sure how good I did because he didn't

16    have my witness here like you were supposed to. Garcia told me that I would get my answer in

17    the mail and he would give me a call in 30 days.

18         On or about April 16, 2012, I called Garcia. I asked him if there was a decision in the case.

19    He said no and he would get back to me.

20         On or about April 24, 2012, I received a letter with the arbitrator's decision. I had lost the

21    case.

**I am being provided a copy of this Confidential Witness Affidavit for my review. I**
**understand that this affidavit is a confidential law enforcement record and should not be**

Initials: _RG_

| Case 02-CB-081553 | | 5/29/2012 |

shown to any person other than my attorney or other person representing me in this proceeding.

I have read this Confidential Witness Affidavit consisting of 10 pages, including this page, I fully understand it, and I state under penalty of perjury that it is true and correct. However, if after reviewing this affidavit again, I remember anything else that is important or I wish to make any changes, I will immediately notify the Board agent.

Date:   May 29, 2012         Signature: _____

Rashaad Guerrero

Signed and sworn to before me on **May 29, 2012** at

**26 Federal Plaza, New York, New York 10278**

NICOLE BUZZELLI

**Board Agent**
**National Labor Relations Board**

Initials: _____

11/23/2010

46 **USE OF FORCE**
**Defense of Justification**
New York Penal Law
Section 35

47 **IMPORTANT NOTE !!!!!!**
- Security Officers, although according to NYS law may be justified in the use of force, may still be liable for being in violation of their respective employer's use of force policy.
- 
- Security officers are reminded to familiarize themselves with their employer's policy and be guided by it.
- 
- Security Officers have the same authority as a private citizen
- 
- Security Officers have NO law enforcement authority
- 
- Security Officers must understand legal justifications for use of force
- 
- 

48 **Definitions**
- Physical Injury = Pain, or Temporary Disfigurement, or Impairment.
- Serious Physical Injury = Serious injury and/or a substantial Risk of Death.
- Physical Force = Force, Including Confinement without the consent of the person.
- Deadly Physical Force = Force that will knowingly create or purposely cause death or serious physical injury
- 

49 **"Imminent Danger" Definition**
- 
- Threatened actions or outcomes that may occur during an encounter.
- 
- Example: Threatened harm does not have to be instantaneous. It's a present danger continuing into the immediate future

50 **Reckless Endangerment**
- Disregard of a foreseeable likelihood that innocent persons will be endangered.
- 
- Reasonable Belief
- More than a hunch, but less than proof beyond a reasonable doubt or absolute certainty.
- Does not mean a correct judgment.
- The belief may later be proven mistaken. What is important is that there existed a reasonable basis for the belief when force was used.
- 
- 

51 **THREAT ASSESMENT**
- Before using force, the security officer must be able to assess the potential threat by determining;
1.What is the person saying?
2.What is the person doing?
3.Has the person taken a substantial step to carry out his/her intent?

4.Is the threat of force by the actor imminent or immediate?

5.

52 **"Reasonable Force" Definition**
- Amount of force reasonably necessary to handle the situation.
- The force used should be proportional to the threat.

53 **FORCE OPTIONS**
- Constructive Force
- Physical contact
- Physical force
- Mechanical Force
- Deadly Physical Force
-

54 **Constructive Force**
- *Does not involve actual physical contact with subject but, involves use of officer's authority to control subject.*
-
- Examples: verbal commands, gestures,warnings

55 **Physical Contact**
- *Routine or procedural contact with subject necessary to effectively accomplish legitimate enforcement objective*
Examples:
- guiding subject into vehicle,
- holding subject's arm while transporting, handcuffing subject

56 **Physical Force**
- *Contact with subject beyond that generally utilized to effect arrest or other enforcement objective.*
-
- Physical force is employed when necessary to overcome subject's physical resistance.
-
- Examples: wrestling resisting subject, wrist locks, striking with hands, feet
-

57 **Mechanical Force**
- *Use of some device or substance to overcome subject's resistance.*
-
- Examples: use of baton or other object, canine physical contact, or chemical or natural agent spraying
Note: The officer should be authorized & trained in using any mechanical force

58 **Deadly Physical Force**
- *An amount of force that is likely to cause either serious physical injury or death to another person.*
-
- Examples: firing a firearm in direction of another person, at vehicle, building in which person believed to be in.
- Note:
- Officer must be authorized & trained in using a firearm
- Deadly Physical Force is not limited to the use of a firearm or any other weapon
  - Example: Choke Hold, pen/pencil into a person's eye, Baseball Bat, tire iron, a

11/23/2010

motor vehicle etc.

59  **Use of Physical Force**
**in defense of a person**
  1.
  • Penal Law Section 35.15
  1.A person may use physical force upon another person when and to the extent he
    reasonably believes such to be necessary to defend himself or a third person from
    what he reasonably believes to be the use or imminent use of unlawful physical force
    by such other person, unless:
    a.The latter's conduct was provoked by the actor himself with intent to cause
      physical injury to another person or;
    b.The actor was the initial aggressor; except that in such case his use of physical
      force is nevertheless justifiable if he has withdrawn from the encounter and
      effectively communicated such withdrawal to such other person but the latter
      persists in continuing the incident by the use or threatened imminent use of
      unlawful physical force.
  2.
    a.

60 **Use of Physical Force**
**in defense of Premises and in defense of a person in the course of a Burglary**
  • Penal Law Section 35.20
  1. Any person may use physical force upon another person when he reasonably
    believes such to be necessary to prevent or terminate what he reasonably believes
    to be the commission or attempted commission by such other person of a crime
    involving damage to premises.
    a. May use deadly physical force if he reasonably believes such to be necessary to
      prevent or terminate the commission or attempted commission of arson.
    •

61 **Use of Physical Force**
**in defense of Premises and in defense of a person in the course of a Burglary**
  • Penal Law Section 35.20
  • A person in possession or control of any premises, or a person licensed or privileged
    to be thereon or therein, may use physical force upon another person when he
    reasonably believes such to be necessary to prevent or terminate what he
    reasonably believes to be the commission or attempted commission by such person
    of a criminal trespass upon such premises.
  • Deadly Physical Force to prevent or terminate
    • Arson, Attempted Arson
    • Burglary, Attempted Burglary

62 **Use of Physical Force**
**in making an arrest or**
**in preventing an escape**
  • Penal Law Section 35.30
  • When directed by a Police Officer or Peace Officer to assist.
    • When and to the extent he reasonably believes such to be necessary to carry out
      such Police/Peace Officer's direction.

63 **Use of Physical Force**
**in making an arrest or**

11/23/2010

**in preventing an escape**
- Penal Law Section 35.30
- A private person acting on his own account may use physical force upon another person when and to the extent that he reasonably believes such to be necessary to effect an arrest or to prevent the escape from custody of a person whom he reasonably believes to have committed an offense and who in fact has committed such offense.

4

05/13/2011  01:21     719-564-1087        IRA        Jun 13 2011 01:41pm        PAGE  01/08

W-19?? (Face)
Rev. 4/??

Cust Code: 309    Facility Code: GNIII    Part Code: 04    Inc. Code: 142-

Pg 268/269

## INCIDENT REPORT

**A) LOCATION TYPE:** (Check one)

☒ LOCATION WITH SECURITY GUARD   165733          ☐ LOCATION WITHOUT SECURITY GUARD

**B) TYPE OF INCIDENT:** (CHECK ONE OR MORE BOXES AS APPLICABLE)

☐ AIDED CASE (ILLNESS/INJURY)   ☐ DEATH (ACCIDENT/HOMOCIDE/SUICIDE)   ☐ WEAPON POSSESSION/USE
☐ ASSAULT   ☐ DRUG POSSESSION/USE/SALE   ☒ OTHER: SPECIFY PHYSICAL
☐ BOMB THREAT   ☐ ROBBERY
☐ BURGLARY   ☐ SEXUAL ABUSE
☐ CHILD ABUSE   ☐ THEFT

**C) PROGRAM NAME:** Melrose JOB Center 40         **PHONE:** 718-664-1179

**D) LOCATION: ADDRESS:** 260 East 16st  Bronx NY    **FLOOR:** 4th   **ROOM:**

**E) INCIDENT: DATE** 6/13/11   **TIME** 1000   **F) TIME ON SCENE** 1000   **TIME CLEARED** 1055

**G) INCIDENT DETAILS:**
What happened? S/O GUERRERO and M/c ████████ ████████ engaged physical Altercation

Where did it happen? 4th FLOOR Reception Area

Who was involved? S/O Guerrero  Client ████████
Mrs. tate,  Mrs Miller  S/O Gomez  S/O Graham  S/A Chavis
P.O. Rudiquez Smt # 6204 / 7789  Client ████████
Why and how did it happen? Started by verbal dispute

**H) DISPOSITION**

☐ CORRECTED CONDITION
☐ NO-CORRECTIVE ACTION NECESSARY
☐ UNFOUNDED
☒ REF. TO OTHER AGENCY

PD. NOTIFIED: ☐ YES ☒ NO
TIME CALLED _____
ARRIVAL TIME _____
OFFICER SHIELD #(s) _____
PCT. # _____
ARREST MADE ☐ YES ☐ NO

AMBULANCE CALL? ☒ YES ☐ NO
TIME CALLED 11:05
ARRIVAL TIME 11:45
TAKEN TO HOSP. ☒ YES ☐ NO
HOSP. TAKEN TO: Bronx Lebanon

**I) DISPOSITION DETAILS:** At 1000hrs Sk Linfa Called S.O ████████ ████████ to 4th Floor Reception area because of A Altercation between S/O Guerrero and Client ████████ and PD Rudriquez Responded Upon Arrival Client was ████████ in Darlene Weeks Office and He stated that he was on line when Client went to the reception windows Unaware that he ████████ was shot by S/O Guerrero, He accused the client of skipping the Line S/O Guerrero then started Yelling at him Stating "I saw him to be there. The two of them began to argue said S/O Guerrero grabbed him by the shirt and threatened to throw him out the ████████ and the Two men began to struggle and tussle with one another S/O Gomez

**J) GUARD'S PREPARER'S NAME** (PRINT) Linfa Amatcchew   **GUARD COMPANY, GUARD'S SHIELD & TITLE** FJC #1936   **SIGNATURE**

**K)** Sgt Chavis     **TITLE** Sgt
**GUARD'S SUPERVISOR'S/LOCATION HEAD'S NAME** (PRINT)

(See reverse side for instructions)




06/13/2011   01:21      716-664-1807                                    PAGE 02/06
Received                                    Jun 13 2011 01:41pm
W-187D (Page 3)
Rev 4/01                                              Human Resources Administration
                                                      Office of Security Services

20F2    HRA    K 265 269

1) DISPOSITION DETAILS CONTINUED: S/o Graham Charnell to ▓(Jos) Beverly
Miller ▓JW I, and male client ▓▓▓▓▓▓▓▓▓▓ intervened and separated the two men. S/o Guerrero states that
after client insured why another client had skipped line. He explained
to client ▓▓▓▓▓▓▓▓▓ that he permitted the other c▓at to approach
reception windows and he was not skipping line. S/o ▓erero states
client ▓▓▓▓▓▓▓▓▓▓▓ they began shouting at him and approached
him aggressively. He did grab client to prevent client from striking
him. the two ▓▓▓▓▓ and various officers separated them. Client
▓▓▓▓▓▓▓▓▓ complained of pain in left gro▓ and back area.
S/o Woka called 911 and E▓t # 6204 and EMS Responded
at 1045hrs. Client was Transported to Bronx Le▓ non Hospital
at 1055hrs. Client ▓▓▓▓▓▓▓▓ stated they as he attempted
to restrain client ▓▓▓▓▓▓ he injured his left thumb.
Client ▓▓▓▓▓▓ did not want medical attention. No injuries
to S/o Guerrero, S/o Graham, S/o Gomez, Char▓l tote, or
Beverly Miller.



**Human Resources
Administration**
Department of
Social Services

HRA Police
Operations

**Robert Doar**
Commissioner

**Thomas DePippo**
Senior Executive
Deputy Commissioner

**Dexter Freeman**
Assistant Deputy
Commissioner

250 Church Street
New York, NY 10013

212 274 5900

W-2-108A
Rev. 03/08

June 22, 2011

FJC Security Services, Inc.
33-10 Queens Boulevard, Suite 300
Long Island City, New York 11101

Mr. Davis

After reviewing the attached documentation, HRA Police Administration has determined that Security Officer Rashaad Guerrero should be removed from his current assignment at 260 East 161st Street, Bronx and banned from all HRA locations.

S/O Guerrero has engaged in conduct prejudicial to good order and discipline which interferes with security rules and regulations. On June 13, 2011, S/O Guerrero was involved in a verbal altercation with a client which became physical. The client sustained significant injuries and had to be taken to the local hospital for treatment. Although S/O Guerrero was instructed to remove himself from confrontations that could become physical and to call his Supervisor, he failed to do either.

Effective today June 22, 2011, S/O Guerrero must be removed from his current assignment and banned from all HRA facilities.

Inspector Joseph Sitro



**HUMAN RESOURCES ADMINISTRATION**
**HRA POLICE OPERATIONS**
**GUARD TRANSFER / BAN FORM**

HRA Police Operations
250 Church Street
New York, New York 10013

**RANKING OFFICER**

This section to be completed by **ranking officer on-site.**
Attach all associated guard complaint forms and submit hard copy to Borough Command Captain.
Requests can not be processed without attached guard complaint forms. If necessary, attach comments on an additional page.

| | TRANSFER | BAN | | | YES | NO |
|---|---|---|---|---|---|---|
| Recommendation: | ☒ | ☐ | Guard Complaint Forms Attached: | | ☒ | ☐ |

Guard Name/Rank:  RASHAAD GUERRERO       Social Security No.: ▓▓▓▓▓

Employed By:  FJC SECURITY       Number of Write-Ups:  01

Location Address:  260 EAST 161ST BRONX NY       Borough Command:  BRONX

| SGT. CHAVIS | | 06-21-11 |
|---|---|---|
| Ranking Officer (print name) | Signature | Date |

**CAPTAIN**

This section to be completed by **Borough Command Captain.**
Review, sign, and submit hard copy to Inspector.

| | TRANSFER | BAN |
|---|---|---|
| Recommendation: | ☐ | ☒ |

Comments:

I recommend that S/O Guerrro be banned from all HRA locations. On June 13th, 2011, S/O Guerrero was involved in a physical altercation that left client Richard Vasquez with significant injuries that was determined after he was transported to local hospital for treatment. S/O Guerrero has received in-service training for many months at his assigned location and failed to remove himself from the situation, then call his Supervisor. S/O Guerrero has proven to be a liability if retained as a security officer within all HRA locations.

| Lisa J Looby | | 06-22-11 |
|---|---|---|
| Borough Command Captain (print name) | Signature | Date |

**INSPECTOR**

This section to be completed by **Inspector.**
Review, sign, and submit hard copy to HRA Police Administration.

| | TRANSFER | BAN |
|---|---|---|
| Recommendation: | ☐ | ☒ |

Comments:

I concur with the recommendation for a Ban. S/O Rasheed Guerrero engaged in an unnessecary physical altercation with a client. S/O Rasheed Guerrero should not be assigned to any HRA facilities.

| Joseph Sitro | | 06-22-11 |
|---|---|---|
| Inspector (print name) | Signature | Date |

**ADMIN**

This section to be completed by **HRA Police Administration.**

Received Date: _____       Received By: _____

Forwarded Date: _____       Signature: _____



| UNITED STATES OF AMERICA | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD | Case | Date filed |
| **CHARGE AGAINST LABOR ORGANIZATION OR ITS AGENTS** | | 05/22/2012 |

**INSTRUCTIONS: File an original of this charge with the NLRB Regional Director of the region in which the alleged unfair labor practice occurred or is occurring.**

### 1. LABOR ORGANIZATION OR ITS AGENTS AGAINST WHICH CHARGE IS BROUGHT

| a. Name<br>LOCAL 32BJ SEIU, AFL-CIO | b. Union Representative to Contact | |
|---|---|---|
| c. Address<br>25 W 18TH ST, NEW YORK, NY 10011-4676 | d. Tel. No.<br>(212)388-3800 | e.Cell No. |
| | f.          Fax No.<br>(212)388-2062 | g. e-Mail |

h. The above-named labor organization or its agents have engaged in and are engaging in unfair labor practices within the meaning of section 8(b), subsection(s) (1)(A) of the National Labor Relations Act, and these unfair labor practices are unfair practices affecting commerce within the meaning of the Act, or are unfair practices affecting commerce within the meaning of the Act and the Postal Reorganization Act.

2. Basis of the Charge (set forth a clear and concise statement of the facts constituting the alleged unfair labor practices)

Beginning in or around February, 2012, the above-named labor organization has restrained and coerced employees by refusing to fairly represent Rashaad Guerrero in the arbitration regarding his termination for arbitrary or discriminatory reasons or in bad faith.

| 3. Name of Employer<br>FJC SECURITY SERVICES | 4a. Tel. No.<br>(347)  418-<br>3800 | 4b. Cell No. |
|---|---|---|
| | | 4d. e-Mail |
| | 4c. Fax No. | |
| 5. Location of Plant Involved (street, city, state, and ZIP code)<br>3310 QUEENS BLVD, 3RD FLOOR, LONG ISLAND CITY, NY 11101-2302 | 6. Employer representative to contact | |

| 7. Type of Establishment (factory, mine, wholesaler)<br>Security | 8. Principal product or service<br>Security Services | 9. Number of Workers employed<br>500+ |
|---|---|---|

| 10. Full name of party filing charge<br>RASHAAD GUERRERO | 11a. Tel. No.<br>(646)351-9897 | 11b. Cell No. |
|---|---|---|
| | 11c. Fax No. | 11d e-Mail |

11. Address of party filing charge (street, city, state, and ZIP code)
1 METROPOLITAN OVAL, APT 11F, BRONX, NY 10462-6535

### 12. DECLARATION

I declare that I have read the above charge and that the statements therein are true to the best of my knowledge and belief.

| By: *Rashaad Guerrero* | RASHAAD GUERRERO | Tel No.<br>(646)351-9897 |
|---|---|---|
| (signature of representative or person making charge) | Print/type name and title or office, if any) | Cell No. |
| | | Fax No. |
| Address:<br>1 METROPOLITAN OVAL, APT 11F, BRONX, NY 10462-6535 | Date:<br>May 22, 2012 | e-Mail |

**WILLFUL FALSE STATEMENTS ON THIS CHARGE CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing unfair labor practice and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information will cause the NLRB to decline to invoke its processes.          1-607017934

06/13/2011  01:21      718-664-1087            HRA                     PAGE  04/06

Human Resources Administration
Office of Security Services

**1) DISPOSITION DETAILS CONTINUED:** I Security Officer Ms Rikhol Graham was standing on post on the fourth floor, in the back by Center 17. I heard a loud noise coming from the front of the line, I then proceeded to see what was going on. When I reach the front Security Officer Mr. Guerrero and the Client Name unknown was exchanging words. Client then started going after Mr. Guerrero. I myself was trying to tell the client to calm down, Client then push me out the way to go after Mr. Guerrero once again. Until when all got out of hand and Mr. Guerrero started to hold the client against the door telling him to chill out. Client was acting out of control. End of my report. ————— Rek

6-13-11



W-152 (Page 3)
Rev. 4/01

Human Resources Administration
Office of Security Services

1) DISPOSITION DETAILS CONTINUED: _____ 6/13/11

MONDAY, 6/13, LOUD WORDS WERE EXCHANGED BETWEEN
SECURITY GUARD GUERRO AND A PARTICIPANT. I RUSHED
TO THE FRONT OF THE OFFICE TO WITNESS SECURITY AND
THE PARTICIPANT YELLING AT ONE ANOTHER NOSE TO NOSE.
BY THE TIME I APPROC APPROACHED THEM, THEY WERE
THROWING THEIR HANDS UP TO FIGHT. SOMEHOW I
WAS ABLE TO GET SECURITY AWAY FROM THE PARTICIPANT.
ANOTHER PARTICIPANT (MALE) TOOK HOLD OF THE COMBATANT
PARTICIPANT. SECURITY WOULD NOT STAND DOWN AND
CONTINUED TO ATTEMPT TO GET TO THE PARTICIPANT. THE
SITUATION CONTINUED TO ESCALATE BECAUSE SECURITY WOULD
NOT STAND DOWN. TESTOSTERONE FUELED THIS ENTIRE GREAT
SITUATION.

Beverly Miller
718 664-1516



06/13/2011  01:21     Received            HRA          Jun 13 2011 01:42pm        PAGE  03/06
                       718-664-1007

W-167 (Page 2)                                                          Human Resources Administration
Rev 1/31/9                                                              Office of Security Services

**1) D SPOSITION DETAILS CONTINUED:** On Monday June 13, 2011 aproximately 10:15 AM I S10 S. Gomez witness an altercation between S10B Guerrero and a male client on the 4th floor main reception. I was on my post on the waiting area side of center 40. S10 R. Guerrero was on the door post on the floor I didn't see how the problem started. A worker name Mrs. Miller was screaming to me to call my superiors when she said that, I ran to the door post where the problem was happening S10 R. Guerrero and the male client where exchanging words and pushing eachother another male unknown client Mrs. Miller and S10 R. Graham where trying to separate them. S10 R. Guerrero and the client where separated and S10 R. Guerrero was in the elevator banks area and the client stayed in the main reception area they kept exchanging words and the client ran to S10 Guerrero, they started punching eachother but they missed because we where separating them. All of the sudden S10 R. Guerrero grab the client by his neck and threw him against the wall. The other unknown client grab S10 R. Guerrero and pushed him away and we pulled the client back inside from the elevator banks area to the reception area and everything was stipped And on my report.    S10 S. Gomez



05/13/2011  01:21    719-664-1087              HRA            JUN 13 2011 01:42PM          PAGE  05/06



Monday   June 13th 2011

At 10:15 hours I was on the 4th floor main reception floor. I was where the clients first enter the floor. I directed all clients to the appropriate line to get a ticket. I was directing clients when a client came through the door with a referral. I was told that clients with referrals are to get a ticket directly at the window. I turned to see what was the loud arguement. It was the client I sent to the window, telling the client on line that he has a referral and that he was told to go to the window. The client on the line threatened and curse the client at the window.

I went to see what was the problem. I spoke with the client on the line. I explained that the client has a referral and he is to get a ticket without making the line, as per the supervisor behind the windows at the main reception desk.

State of New York;
County of New York

Sworn to before me this
8 day of Sept 2011

Rafael Jimenez

Rashaad Guenen

RICHARD B. MINOR
Notary Public, State of New York
Reg. No. 04MI6147382
Qualified in New York County
Commission Expires



I told the client on the line to relax. He refused I told him if he is not going to calm down I will call my supervisor. He said he do not give a fuck and he invited me outside to fight. I told him I dont want to fight him, I just want him to get a ticket so he can be seen. He got in my face. I called a 1013 to the 4th floor.

The client was eager to fight me. I still refused to fight him. He continued to approach me. He was in my face. I grabbed him to restrain him. I did not know if he would swing at me or not. His hand came up. I held him against the wall, while some clients and HRA workers tried to restrain him also. I moved away. I went where the elevator were. The client continued towards m Mr Lopez (Deputy Director) told me to go to the back area where the back stairs were. I went.

x  Roshael Duenew

tate of New York
ounty of New York

worn to before me this
8 day of Sept 20 11

RICHARD B. MINOR
Notary Public, State of New York
Reg. No. 04M16147382
Qualified in New York County
Commission Expires June 5, 20 14

(F)

W-272 Page 1:
Rev v/2 · '

Human Resources Administration
Office of Security Services

1) DISPOSITION DETAILS CONTINUED:  On  6/13/2011  at

Milrose Job Ctr #40, on the Forth Floor, I
Witnessed an altercation between the guard
and a client. They were Pulled apart and
The guard was pushed to the otherside of
the door in the elevator area, and the doors
was closed. While others were thing to calm
the client down, he came running and Pushed
his way through the closed doors after the
guard and Shoved him. They were pulled
apart by others at which time the guard
Exited the Floor.

C. Icte
FDR
6/13/2011

RECEIVED
JUN 13 2011 04:42PM

F

[Print in *black* ink all area in bold letters.]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------x

___Donnell Guerrero___,

[fill in name(s)]          Plaintiff(s)/Petitioner(s)

- against -

NYC HUMAN RESOURCES ADMINISTRATION;
FJC SECURITY SERVICES INC;

[fill in name(s)]          Defendant(s)/Respondent(s)
-------------------------------------------------------x

**Index Number**

402238/11

**AFFIDAVIT
IN OPPOSITION**
FJC Security Services
Inc;

STATE OF NEW YORK
COUNTY OF ___NEW YORK___ ss:

___DONNELL GUERRERO___ [your name], being duly

sworn, deposes and says:

1. I am the (plaintiff) petitioner / defendant / respondent [circle one] in this matter. I make

this affidavit in opposition to the motion or petition by [name of party] DONNELL GUERRERO

for an order [describe what the other party asked for] They filed a motion to dismiss.
Defendant (FJC) Security Services Inc, claimed that I never filed a
greivance.

_____

_____

_____

2. I believe the Court should deny the motion or petition because [Explain why it should be

denied. Explain any Exhibits (documents). Add more pages if needed]. HRA police Sgt.
Chavis wrote a false report concerning the altercation with me and
the client. The altercation began at 10:15 am and was over about
10:35 am. Sgt Chavis and P.O. Rodriguez came on the scene
after the altercation was over. There was never a fight. I never
yelled at the client. I only explained about the (HRA) policy to the

4-06

client.(HRA) policy is that,if a client already was on the line, they do not get back on the line because they received a referral to get a ticket at the window,because where the client received the referral that unit was unable to generate a ticket. This mentally disturbed ~~per~~ individual ( Richard Vasquez) had a physical interaction with the other clients who helped to try to restrain him. One client injured his thumb or hand as he tried to restrain the aggressive, mentally disturbe client. S/o Graham, (A·J·a·s) Charnelle Tate, (A·J·a·s) Beverly Miller and another male client intervened to prevent this unstable client from hitting me. The client who injured his thumb requested medical attention at the (base) security office on the 8th floor. He wanted ice from J/supervisor Wofa. He was told there was $no first aid kit available.            (Exibits)

A-HRA Sgt Chavis made false statements in his report. He didn't arrive at the altercation when he was called. He arrived after the altercation with P.O. Rodriguez.

B- False Report

C- S/o Gomez stated that she did not see what happened at first. Then, she made a false statement saying there were punches thrown

D-This is a true and accurate statement.

WHEREFORE, I respectfully request that this motion/petition be denied.

Sworn to before me on

10th day of September , ~~200~~ 2011

_____
Notary Public

p̶ Rashael D Guerrero
[sign your name in front of a Notary]

Rashaad D. Guerrero
[print your name]

GITA LAVANI
Notary Public, State of New York
No. 01LA6210796
Qualified in Kings County
Commission Expires 08/31/2013

2

AffOpp4-06



**HUMAN RESOURCES ADMINISTRATION**
**HRA POLICE OPERATIONS**
**SECURITY GUARD COMPLAINT FORM**



return to:   HRA Police Operations
250 Church St., 6th Floor
New York, New York 10013

Security Guard:   **RASHAAD GUERRERO**                Social Security No.: ▆▆▆▆▆
                              (print name)

Employed By:   **FJC Security Services**
                    (name of security guard vendor)

Date of Infraction:   **6/13/2011**              Time:   **1000HRS**

Location Name:   **MELROSE JOB CENTER 40**        Address:   **260 EAST 161 ST BRONX NY**

Complainant:   **SGT.CHAVIS**              Phone No.:   **718-664-1179**

**CHECKLIST:**

| | |
|---|---|
| ☐ | Lateness |
| ☐ | Failure to adhere to sign in/out procedure |
| ☐ | Unauthorized absence from post |
| ☐ | Failure to wear prescribed uniform while on duty |
| ☐ | Refusal to carry out a direct order |
| ☐ | Insubordination |
| ☐ | Conduct prejudicial to good order and discipline |
| ☒ | Conduct which prevents/interferes with security rules and regulations |
| ☐ | Involvement with intoxicants, drugs, controlled substances while on duty |
| ☐ | Unauthorized operation and/or use of Agency equipment |
| ☐ | Lounging/sleeping while on duty |
| ☐ | Personal use of Department telephones |
| ☐ | Use of unauthorized equipment and/or materials (TV, radio, newspaper, magazines, etc.) |
| ☐ | Other: |

**REMARKS:** (write a brief description of each checked infraction)

AT approximately 1000hrs while performing his duties s/o Guerrero got into a verbal confrontation with a client. A supervisor was not immediately notified until the confrontation became physical. Once s/o Guerrero and the client were separated  s/o Guerrero contined to act aggressively towards client. This is not consistent with security rules and regulations.

_____          _____          SGT.CHAVIS          6/21/2011
Guard's Signature                      Date            Complainant's Signature        Date



**B**



STATE OF NEW YORK
**UNEMPLOYMENT INSURANCE APPEAL BOARD**
ADMINISTRATIVE LAW JUDGE SECTION
59 Maiden Lane
31st Floor
New York NY 10038-4644
(212) 238-2420
FAX:(212) 238-2451

JAYSON S. MYERS
CHIEF ADMINISTRATIVE LAW JUDGE
TERESA A. DEMEO
CHRISTOPHER M. TATE
LANNY E. WALTER
MATTHEW J. TIERNEY
PRINCIPAL ADMINISTRATIVE LAW JUDGE

BENJAMIN H. REYES
ANDREA S. ADDISON
SENIOR ADMINISTRATIVE LAW JUDGE

### DECISION AND NOTICE OF DECISION
### DECISIÓN Y AVISO DE LA DECISIÓN TOMADA

A.L.J. Case No. 011-31237

Mailed and Filed: December 8, 2011

IN THE MATTER OF:

RASHAAD GUERRERO
1 METROPOLITAN OVAL 11F
BRONX NY 10462

FJC SECURITY SERVICES INC
BARNETT ASSOCIATES
PO BOX 7340
GARDEN CITY NY 11530

CARDOZO LABOR &
EMPLOYMENT CLINIC
55 FIFTH AVE
NEW YORK NY 10003

JOSHUA E FINGOLD, ESQ.
PO BOX 3098
NEW YORK NY 10163-3098

Department of Labor Office: 831

Hearing Requested: September 22, 2011

**PLEASE TAKE NOTICE** that this decision has been duly mailed on the date listed above. If you appeared at the hearing and are not satisfied with this decision, you may appeal within **TWENTY DAYS** from the date this decision was mailed. **READ IMPORTANT INFORMATION ON REVERSE SIDE REGARDING YOUR RIGHT TO APPEAL.** Any party who failed to appear at the hearing has the right to apply to reopen the case. For the application to be granted, the party must apply within a reasonable time and must establish good cause for its failure to appear.

**POR FAVOR TOME NOTA:** esta decisión ha sido debidamente enviada por correo en la fecha que aparece arriba. Si usted asistió a la audiencia y no está satisfecho con la decisión, puede apelar dentro de **VEINTE DÍAS** contados a partir de la fecha en que esta decisión fue enviada por correo. **LEA LA INFORMACIÓN IMPORTANTE AL REVERSO SOBRE SUS DERECHOS DE APELACIÓN.** Cualquiera de las partes que falle en comparecer a la audiencia, tiene el derecho de solicitar que se reabra su caso. Para que dicha solicitud sea otorgada, la parte interesada debe solicitarlo dentro de un periodo de tiempo razonable y debe establecer buena causa por no haber comparecido a la audiencia.

**DOCUMENTO IMPORTANTE. PUEDE OBTENER UNA TRADUCCIÓN DEL MISMO LLAMANDO AL 1-888-209-8124 (FUERA DEL ESTADO DE NUEVA YORK 1-877-358-5306)**

ISSUES:          Loss of employment through misconduct.

The Department of Labor issued the initial determination disqualifying the claimant from receiving benefits effective June 23, 2011, on the basis that the claimant lost employment through misconduct in

AB 665-0 (10/06)

A.L.J. Case No.011-31237        RASHAAD GUERRERO                        Page 2
                                NOTICE OF DECISION

## CLAIMANTS

**IF YOU DISAGREE WITH THIS DECISION, YOU HAVE A RIGHT TO APPEAL TO THE UNEMPLOYMENT INSURANCE APPEAL BOARD.**

Parties may be represented by lawyers or other persons of their choice on appeal to the Appeal Board. For representing a claimant, a lawyer or an agent registered by the Appeal Board may charge a fee. The fee must be approved by the Appeal Board before payment may be accepted by such lawyer or agent. No other person may charge a fee for representing a claimant. If you do not have enough money to hire a lawyer or registered agent, you may be able to get one free through your local Legal Aid Society or Legal Services Program.

### TO APPEAL A DECISION

1.   Continue to follow all instructions from the Unemployment Insurance office where you originally filed your claim and to certify for benefits as long as you are unemployed and claiming benefits. This will protect your rights to any benefits you claim.

2.   Within twenty (20) days of the date printed on the face of this decision, mail a letter to the office where you originally filed your claim or to the Appeal Board at P.O. Box 15126, Albany, New York 12212-5126, or fax your appeal to the Appeal Board at (518) 402-6208. Please state that you wish to appeal and the reasons for your appeal. Include your ALJ Case Number (found just above your name on the face of the Notice of Decision) and a copy of the Notice of Decision.

3.   Claimants who appeal are <u>not</u> required to pay a deposit on filing an appeal.

### EMPLOYERS

If you wish to appeal this decision, you may file a notice of appeal within twenty (20) days from the date printed on the face of this decision to the office where the claim was originally filed and which issued the initial determination, or to the Unemployment Insurance Appeal Board at P.O. Box 15126, Albany, New York 12212-5126, or you may fax your notice of appeal to the Appeal Board at (518) 402-6208. Such notice of appeal should include the A.L.J. Case Number (found on the face of this Notice of Decision), the reason(s) for the appeal and a copy of the Notice of Decision.

**ALL PARTIES WILL RECEIVE A NOTICE OF RECEIPT OF APPEAL DIRECTLY FROM THE APPEAL BOARD AFTER ANY APPEAL IS MADE.**

### INSTRUCCIONES A LOS RECLAMANTES

#### RECLAMANTES

**SI NO EST" DE ACUERDO CON ESTA DECISIPN, USTED TIENE DERECHO DE APELARLA A LA JUNTA DE APELACIONES DEL SEGURO POR DESEMPLEO.**

Las partes si lo desean, pueden estar representadas por abogados u otras personas que ellos seleccionen en la apelación a la Junta de Apelaciones (Appeal Board). Un abogado o un agente que esté registrado por la Junta de Apelaciones, puede cobrale honorarios por representarle. Estos honorarios deben ser aprobados por la Junta de Apelaciones antes que el pago pueda ser aceptado por dicho abogado o agente registrado. Ninguna otra persona podrá cobrar honorarios por representar al reclamante. Si usted no tiene suficiente dinero para contratar a un abogado o un agente registrado, puede conseguir uno gratis a través de la Sociedad de Asistencia Legal (Legal Aid Society) o el Programa de Servicios Legales (Legal Services Program).

#### PARA APELAR LA DECISIPN

1.   Continte siguiendo todas las instrucciones de la oficina del Seguro por Desempleo (Unemployment Insurance) donde usted presentó su reclamo originalmente y para certificar por los beneficios mientras permanezca desempleado y esté reclamando beneficios. Esto protegerá su derecho a recibir cualquier beneficio que reclame.

2.   Antes de cumplirse veinte (20) días de la fecha que aparece al frente de esta decisión, envíe una carta a la oficina donde presentó originalmente su petición o al Appeal Board a P.O. Box 15126, Albany, New York 12212-5126, o envíe por fax su apelación al Appeal Board al (518) 402-6208. Por favor, explique que desea apelar y las razones que tiene para hacerlo. Incluya su ntmero de caso ALJ (lo encontrará justo encima de su nombre al frente de este Aviso de Decisión) y envíe una copia de este Aviso de Decisión.

3.   Los reclamantes <u>no</u> necesitan depositar dinero para poder apelar su caso.

**TODAS LAS PARTES RECIBIR"N UN AVISO DE RECIBO DE APELACIPN DIRECTAMENTE DE LA JUNTA DE APELACIONES DESPU1S DE QUE SU PETICION SEA RECIBIDA.**

connection with that employment and holding that the wages paid to the claimant by the employer cannot be used toward the establishment of a claim for benefits. The claimant requested a hearing.

A hearing was held at which testimony was taken. There were appearances by the claimant and on behalf of the employer.

FINDINGS OF FACT: Claimant was employed as a security officer for a security company until on or about June 22, 2011. The employer had a policy that prohibited fighting on the job. On June 13, 2011, claimant was assigned to work at a City of New York Human Resources office. On that day a client got into an argument while in line. He contended that someone jumped the line. When claimant interceded to diffuse the situation the client used a vulgarity towards the claimant. Claimant indicated that he would call a supervisor. Claimant left the area and the client followed and confronted him. Another person tried to restrain the client. The client challenged claimant to go outside. Claimant called a supervisor on a walkie talkie and advised of the situation. The supervisor indicated they were on their way. Another security officer, Graham, came on the scene. The client pushed her. The client came at claimant and shoved him. Claimant grabbed the client around the waist to subdue him, in accordance with claimant's training. Claimant had no other physical interaction with the client. Claimant was discharged from his employment on or about June 22, 2011, because the employer believed that he was fighting on the job. Claimant did not fight on the job on June 13, 2011.

OPINION: Pursuant to Labor Law § 593 (3), a claimant is disqualified from receiving benefits after having lost employment through misconduct in connection with that employment. Pursuant to Labor Law § 527, the wages paid in such employment cannot be used to establish a future claim for benefits.

The credible evidence establishes that claimant was discharged because the employer believed that he was fighting on the job. As claimant did not fight with the client but only attempted to subdue him by grabbing him around the waist in accordance with claimant's training, on the record before me, I find that claimant committed no act of misconduct that resulted in his discharge. In reaching this decision, I accept the testimony of the claimant as it is supported by the testimony of security officer, Graham. Accordingly, I conclude that claimant is not subject to the disqualification imposed.

DECISION: The initial determination, disqualifying the claimant from receiving benefits effective June 23, 2011, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by the employer cannot be used toward the establishment of a claim for benefits, is overruled.

The claimant is allowed benefits with respect to the issues decided herein.


                                                        /s/ Diane Dubiac
                                                      _____
                                                      **Administrative Law Judge**

A.L.J. Case No.011-31237      RASHAAD GUERRERO                    Page 4
                              NOTICE OF DECISION

## CLAIMANTS

**IF YOU DISAGREE WITH THIS DECISION, YOU HAVE A RIGHT TO APPEAL TO THE UNEMPLOYMENT INSURANCE APPEAL BOARD.**

Parties may be represented by lawyers or other persons of their choice on appeal to the Appeal Board. For representing a claimant, a lawyer or an agent registered by the Appeal Board may charge a fee. The fee must be approved by the Appeal Board before payment may be accepted by such lawyer or agent. No other person may charge a fee for representing a claimant. If you do not have enough money to hire a lawyer or registered agent, you may be able to get one free through your local Legal Aid Society or Legal Services Program.

### TO APPEAL A DECISION

1.  Continue to follow all instructions from the Unemployment Insurance office where you originally filed your claim and to certify for benefits as long as you are unemployed and claiming benefits. This will protect your rights to any benefits you claim.

2.  Within twenty (20) days of the date printed on the face of this decision, mail a letter to the office where you originally filed your claim or to the Appeal Board at P.O. Box 15126, Albany, New York 12212-5126, or fax your appeal to the Appeal Board at (518) 402-6208. Please state that you wish to appeal and the reasons for your appeal. Include your ALJ Case Number (found just above your name on the face of the Notice of Decision) and a copy of the Notice of Decision.

3.  Claimants who appeal are not required to pay a deposit on filing an appeal.

### EMPLOYERS

If you wish to appeal this decision, you may file a notice of appeal within twenty (20) days from the date printed on the face of this decision to the office where the claim was originally filed and which issued the initial determination, or to the Unemployment Insurance Appeal Board at P.O. Box 15126, Albany, New York 12212-5126, or you may fax your notice of appeal to the Appeal Board at (518) 402-6208. Such notice of appeal should include the A.L.J. Case Number (found on the face of this Notice of Decision), the reason(s) for the appeal and a copy of the Notice of Decision.

**ALL PARTIES WILL RECEIVE A NOTICE OF RECEIPT OF APPEAL DIRECTLY FROM THE APPEAL BOARD AFTER ANY APPEAL IS MADE.**

## INSTRUCCIONES A LOS RECLAMANTES

### RECLAMANTES

**SI NO EST" DE ACUERDO CON ESTA DECISIPN, USTED TIENE DERECHO DE APELARLA A LA JUNTA DE APELACIONES DEL SEGURO POR DESEMPLEO.**

Las partes si lo desean, pueden estar representadas por abogados u otras personas que ellos seleccionen en la apelación a la Junta de Apelaciones (Appeal Board). Un abogado o un agente que esté registrado por la Junta de Apelaciones, puede cobrale honorarios por representarle. Estos honorarios deben ser aprobados por la Junta de Apelaciones antes que el pago pueda ser aceptado por dicho abogado o agente registrado. Ninguna otra persona podrá cobrar honorarios por representar al reclamante. Si usted no tiene suficiente dinero para contratar a un abogado o un agente registrado, puede conseguir uno gratis a través de la Sociedad de Asistencia Legal (Legal Aid Society) o el Programa de Servicios Legales (Legal Services Program).

### PARA APELAR LA DECISIPN

1.  Contin‡e siguiendo todas las instrucciones de la oficina del Seguro por Desempleo (Unemployment Insurance) donde usted presentó su reclamo originalmente y para certificar por los beneficios mientras permanezca desempleado y esté reclamando beneficios. Esto protegerá su derecho a recibir cualquier beneficio que reclame.

2.  Antes de cumplirse veinte (20) días de la fecha que aparece al frente de esta decisión, envíe una carta a la oficina donde presentó originalmente su petición o al Appeal Board a P.O. Box 15126, Albany, New York 12212-5126, o envíe por fax su apelación al Appeal Board al (518) 402-6208. Por favor, explique que desea apelar y las razones que tiene para hacerlo. Incluya su n‡mero de caso ALJ (lo encontrará justo encima de su nombre al frente de este Aviso de Decisión) y envíe una copia de este Aviso de Decisión.

1.  Los reclamantes no necesitan depositar dinero para poder apelar su caso.

ODAS LAS PARTES RECIBIR"N UN AVISO DE RECIBO DE APELACIPN DIRECTAMENTE DE LA
nta DE APELACIONES DESPU1S DE QUE SU PETICION SEA RECIBIDA.

United States District Court

Southern District of New York

12 CV 05763 (SHS), Rashaad,
Donnell Guerrero V. FJC Security
Services, Inc., et, al.

## Affirmation of Service

I, Donnell Guerrero Declare Under penalty
of persury that I Served Defendants a copy
of the Amended complaint by Mail.

U.S.D.J. Sidney Stein
U.S. District Court For
the Southern District
of New York, 500
Pearl St. NYC 10007

Judith Padow, Esq.
SEIU, Local 32BJ.
25 W. 18th St.
NYC 10011

Scott Weis
FJC
50 Main St.
Suite 1000
White Plains, NY
10606

DAte 10/1/2012                    Rashad Donnell Guerrero