```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: 8/19/13              │
└─────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RASHAAD DONNELL GUERRERO, :
:
                          Plaintiff,    :          REPORT AND
:          RECOMMENDATION
           - against -                  :
:          12 Civ. 5763 (SHS) (RLE)
FJC SECURITY SERVICES, INC.,            :          13 Civ. 1204 (SHS) (RLE)
LOCAL 32BJ SEIU,                        :
:
                          Defendants.   :

---

**To the HONORABLE Sidney H. Stein, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Plaintiff Rashaad Donnell Guerrero ("Guerrero") filed a Complaint ("Compl.") on July 25, 2012, against Defendants FJC Security Services Inc. ("FJC") and Local 32BJ SEIU ("Union"), alleging that FJC wrongfully terminated him in June 2011 and that the Union failed to adequately represent him during arbitration. (Compl. at 2.) Guerrero subsequently filed an Amended Complaint ("Am. Complaint") on October 1, 2012, and a Second Amended Complaint ("Sec. Am. Complaint") on October 16, 2012.[1] On February 4, 2013, Guerrero filed a motion for leave to file a Third Amended Complaint ("Third Am. Complaint"). On February 22, 2013, Guerrero filed a complaint ("Fourth Complaint") that alleges malpractice against the Union, and is filed under a separate case number (*Guerrero v. SEIU Local 32BJ*, No. 13 cv. 1204 (SHS) (RLE)). In each of his complaints, Guerrero asks that this Court vacate the arbitration award

---

[1] Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its pleading once as a matter of course without leave of court. In all other instances, Federal Rule of Civil Procedure 15(a)(2) requires that a party seeking to amend a pleading receive the opposing party's written consent or the court's leave. Guerrero did not seek leave to file his Second Amended Complaint. However, because Guerrero is a *pro se* plaintiff, the Court has conducted an independent review of all of the evidence submitted by both parties to ascertain whether the record reveals any plausible claim for relief.

entered against him on April 2, 2012, under Section 301 of the Labor Management Relations Act ("LMRA"). 29 U.S.C. §185 (West 2013). Before this Court are: (1) FJC's Motion to Confirm Arbitrator's Award and Motion to Dismiss Amended Complaint for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12 (b)(6); (2) the Union's Motion to Dismiss the First Amended Complaint and in Opposition to Motion for Leave to File Second Amended Complaint; and, (3) the Union's Motion to Dismiss Guerrero's Fourth Complaint. For the reasons set forth below, I recommend that FJC and the Union's motions to dismiss be **GRANTED**, and FJC's motion to confirm the arbitrator's award be **GRANTED**.

## II. BACKGROUND

Guerrero was employed by FJC as a security guard at the New York City Human Resources Administration Center ("HRA"), from May 2006 to June 2011. (Sec. Am. Compl. at 29, 31.) FJC and the Union are signatories to a collective bargaining agreement ("CBA") which includes the HRA's security guard employees. (Def. FJC Mem. of Law In Supp. Of Mot. To Confirm Arbitrator's Award And Mot. To Dismiss Am. Compl. ("FJC Mot. To Dismiss") at 2.)

On June 13, 2011, Guerrero was working at the Melrose Job Center in the Bronx, New York, when two HRA clients began to argue about whether one client had cut in front of the other, Richard Vasquez ("Vasquez"), while waiting in line. (Am. Compl. at 7, 25.) Guerrero states that he told Vasquez that the other client had not cut the line and was following procedure. (*Id.*) Vasquez began yelling and Guerrero told him to calm down. (*Id.*) Guerrero states that he called his supervisor and sent distress calls over the radio unit. (*Id.* at 7, 26.) A third client and a security guard, Roshell Graham ("Graham"), tried to diffuse the situation by asking Vasquez to calm down. (*Id.* at 26, 40, 45.) Guerrero tried to leave the area. (Sec. Am. Compl. at 5-6.) Vasquez then pushed Graham out of the way and attacked Gurrero. (Am. Compl. at 26.)

2

Witnesses gave different accounts of the incident. (Am. Compl. at 35, 36, 40, 41, 42.)
An incident report signed by Woofa Amoaka ("Amoaka"), Guerrero's supervisor at the Melrose
Job Center, and Sargent Chavis ("Chavis"), the ranking officer, states, "Security officer Guerrero
grabbed [Vasquez] by the shirt and threatened to throw him out." (Am. Compl., Ex. A.)
Graham stated, "[the] client pushed me out of the way to go [to] officer Guerrero . . . Mr.
Guerrero started to hold the client against the door telling him to chill out." (*Id.* at 40.) Beverly
Miller ("Miller"), an HRA employee, witnessed Guerrero "and the participant yelling at one
another nose to nose" and noted that Guerrero "would not stand down." (*Id.* at Ex. E.) Security
Officer Stephanie Gomez ("Gomez") stated that "[Vasquez] ran to S/O Guerrero, they started
punching each other but they missed because [Graham and Miller] were separating them. All of
[a] sudden Guerrero grab[bed Vasquez] by his neck and threw him against the wall." (*Id.* at Ex.
C.)

By some accounts, Guerrero subdued Vasquez by placing him in a bear hug. (*Id.* at 20;
Def. Union Mem. of Law in Supp. Of Mot. To Dismiss First Am. Compl. and In Opp'n to Mot.
For Leave to File Second Am. Compl. ("Union Mot. To Dismiss") at 3.) Guerrero claims he
grabbed Vasquez around his waist to restrain him. (Sec. Am. Compl. at 6; Am. Compl. at 51.)
Others, including Gomez, state that Guerrero grabbed Vasquez in the neck area. (Am. Compl. at
18.) All accounts agree that Guerrero used some type of physical force to restrain Vasquez. (*Id.*
at 7, 40, 51; Ex. A; Ex. C; Ex. F; Ex. G; Ex. I.)

After the altercation, FJC banned Guerrero from all HRA locations and terminated
Guerrero's employment on July 11, 2011. (Union Mot. To Dismiss at 4.) The Union had
previously obtained Guerrero's reinstatement to work at HRA after a separate incident occurring
in December 2008. (*Id.* at 2.) As a condition of reinstatement, Guerrero signed a final warning

3

agreement which dictated that any future incidents would result in Guerrero's termination. (*Id.*)

Guerrero applied for unemployment benefits. (Am. Compl. at 59.) His claim was initially denied by the Administrative Law Judge in June 2011, but Guerrero successfully appealed the decision. (*Id.*) Both Graham and Amoaka testified on Guerrero's behalf at the appeal. (*Id.* at 27.) Guerrero credits the success of his appeal to Graham and Amoaka's testimony. (*Id.*) On August 5, 2011, Guerrero filed a state court action for wrongful termination against the HRA and FJC. (Union Mot. To Dismiss at 4.) The action was later dismissed. (*Id.*)

The Union filed a grievance against FJC on Guerrero's behalf on June 23, 2011. (Am. Compl. at 26.) When the grievance was not resolved, the parties went to arbitration on March 21, 2012. (FJC Mot. to Dismiss at 2.) Guerrero met with the Union's attorney to prepare for arbitration. (Am. Compl. at 28.) In their initial meeting, Guerrero emphasized to the attorney that Graham and Amoaka should be called to testify on his behalf. (*Id.*) The Union attorney told Guerrero that he would contact Graham and Amoaka and ask them to testify. (*Id.*) Guerrero asked the attorney if it was necessary to subpoena the witnesses, and the attorney said that they did not need a subpoena. (*Id.*) Guerrero contacted the Union attorney on two subsequent occasions to find out whether he had contacted Graham and Amoaka. (*Id.*) On both occasions, the Union attorney told Guerrero that he had contacted Graham, but that because Graham was at work, she was afraid of getting into trouble and could not speak. (Am. Compl. at 28, 29.) On March 21, 2012, the day of the arbitration, Guerrero states that the Union attorney asked him whether Graham and Amoaka would appear. (*Id.* at 29.) Guerrero responded that he thought it was the attorney's responsibility to have them appear. (*Id.*) Guerrero asked the attorney to adjourn the case so that Graham could appear to testify, but Guerrero states that the attorney said that they needed to proceed with the arbitration. (*Id.*) Graham did not appear to testify, and

4

Amoaka, as well as Gomez, testified for FJC.  (*Id.*)

Arbitrator Bluth denied Guerrero's claim that he was discharged without just cause and, based on Gomez's and Amoaka's testimony, found that FJC had just cause to discharge him. (*Id.* at 21.)  Further, the arbitrator found that Guerrero should not have made physical contact with the aggrieved client given his significant training in managing confrontations.  (*Id.*)

After the arbitration, Guerrero filed a charge with the National Labor Relations Board ("NLRB") on May 22, 2012.  (Union Mot. To Dismiss at 6.)  Guerrero claimed that the Union failed to fairly represent him during arbitration for "arbitrary or discriminatory reasons or in bad faith." (Am. Compl. at 39.)  The charge and a subsequent appeal were dismissed on the ground that there was no evidence to support Guerrero's claims.  (Union Mot. To Dismiss at 6.) Specifically, the NLRB Appeal Dismissal Letter states that although Guerrero disagreed with the Union attorney's tactical decisions, he did not have the right to "dictate the arguments the Union will present or what testimony is to be sought."  (*Id.*)

Guerrero now raises claims that: (1) the arbitrator's award should be vacated pursuant to 9 U.S.C. § 10(a)(3), as the award was biased, corrupt, and based on false and misleading evidence, (Sec. Am. Compl. at 10.); (2) the Union violated its duty of fair representation by failing to secure his supportive witnesses, (Am. Compl. at 4, 14.); (3) FJC violated the CBA by terminating his employment without just cause, (*id.* at 3.); and (4) the Union engaged in malpractice during the arbitration.  (Fourth Compl. at 1.)

## III. DISCUSSION

### A.  Standard for Dismissal under Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may assert a motion to dismiss

for failure to state a claim on which relief can be granted.  In deciding a motion to dismiss, the

Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint

as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time

Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  However, a court is not bound to accept as true

a legal conclusion couched as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a

cause of action will not do." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  Nor does a complaint suffice if it offers "naked assertion[s]" devoid of "further factual

enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557.)

Under *Twombly*, the court must also apply a "flexible 'plausibility standard,' which

obliges a pleader to amplify a claim with some factual allegations in those contexts where such

amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d

Cir. 2007); *see Elektra Entm't Group, Inc. v. Santangelo*, No. 06 Civ. 11520 (SCR)(MDF), 2008

WL 4452393, at *2 (S.D.N.Y. 2008).  A claim is plausible when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Twombly*, 550 U.S. at 556.  Only a complaint that states a plausible claim

for relief survives a motion. *Id.*

Given Guerrero's status as a *pro se* plaintiff, the court must "take care to construe [his]

papers liberally," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988), and interpret the

complaint "to raise the strongest arguments [it] suggest[s]." *Pabon v. Wright*, 459 F.3d 241, 248

6

(2d Cir. 2006).

**B. Guerrero's Motion to Vacate the Arbitrator's Award is Time Barred**

Under Section 12 of the Federal Arbitration Act ("FAA"), "[n]otice of motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (West 2013). The three months begins accruing from the date of the award. *Colavito v. Hockmeyer*, 605 F. Supp. 1482, 1487 (S.D.N.Y. 1985) (citing *Florasynth, Inc.*, 750 F.2d at 175). FJC's arbitration award was rendered on April 4, 2012, (Am. Compl. at 23), and FJC was not served until September 18, 2012. The Union was not served until September 27, 2012. FJC argues that under *Florasynth* and Section 12 of the FAA, Guerrero may not vacate the arbitration award entered against him because he did not serve notice timely, and that the three month time period to vacate cannot be extended. (FJC Mot. To Dismiss at 7.)

FJC's reliance on Section 12 of the FAA is misplaced. The sole source of subject matter jurisdiction for Guerrero's petition to vacate the arbitration award entered against him is Section 301(a) of the LMRA – not the FAA. *See, e.g., Harry Hoffman Printing, Inc. v. Graphic Communications, Int'l Union, Local 261*, 912 F.2d 608, 611-12 (2d Cir. 1990) (noting FAA does not confer subject matter jurisdiction on a district court and independent basis of jurisdiction needed before considering petitions under Act). As Congress provided no statute of limitations for suits under Section 301, the Second Circuit has held that the statute of limitations applicable to a motion to vacate an arbitration award in a suit under Section 301 of the LMRA is borrowed from state law. *See, e.g., Harry Hoffman Printing*, 912 F.2d at 612. Therefore, *Florasynth*, which did not involve the LMRA, does not govern here. *Local 205, Community and Social Agency Employees' Union, District Council 1707 AFSCME, AFL-CIO v. Day Care Council of*

7

*New York, Inc.*, 992 F. Supp. 388, 394 (S.D.N.Y. 1998).  Indeed, FJC recognizes that Guerrero

brings this case under the LMRA in each of his complaints (*see* FJC Mot. To Confirm, 5), but

fails to make the distinction that the FAA's three-month statute of limitations is inapplicable in

this case. *See Harry Hoffman Printing,* 912 F.2d at 609 (applying New York statute of

limitations to petition to vacate brought under LMRA and the FAA); *Burns Int'l Sec. Servs., Inc.*

*v. Int'l Union, United Plant Guard Workers of America (UPGWA)*, 47 F.3d 14, 16 (2d Cir. 1995)

(applying Connecticut statute of limitations to petition to vacate brought under LMRA and

FAA).

> The statute of limitations applicable to a motion to vacate an arbitration award in a suit

under Section 301 of the LMRA is borrowed from Section 7511(a) of the New York Civil

Practice Law and Rules, *Harry Hoffman Printing,* 912 F.2d at 612, which provides that "[a]n

application to vacate or modify an award may be made by a party within ninety days after its

delivery to him. C.P.L.R. § 7511 (a).  Section 7511(a) only applies to motions to vacate or

modify arbitration awards. *Local 205*, 992 F. Supp. at 394.  It does not apply to objections or

defenses to a petition to confirm, where New York law permits a respondent to oppose a motion

to confirm beyond the three month limitations period. *Id.*

> Here, as Guerrero moved to vacate the arbitration award entered against him (as opposed

to responding in opposition to a petition to confirm), the ninety day limitations period applies,

and no extensions are available to him.  Therefore, Guerrero's claim is time barred.

## C. Guerrero Does Not Meet the Narrow Grounds for Vacatur

> Even if Guerrero's motion had been timely filed, it would fail on the merits.  "Arbitration

awards are subject to limited review to avoid undermining the twin goals of arbitration, namely,

settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music*

8

*Publishers v. Weiss*, 989 F.2d 108 (2d Cir. 1993). The FAA "severely restricts the power of a court to vacate an award to cases involving fraud in the procurement of the award, misconduct, or arbitrators clearly exceeding their powers." *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). Under Section 10 of the FAA, an award may be vacated only: "(1) where it was procured by corruption, fraud or undue means; (2) where there was evident partiality or corruption in the arbitrators . . .; (3) where the arbitrators were guilty of misconduct in. . . refusing to hear evidence pertinent and material to the controversy . . .; or (4) where the arbitrators exceeded their powers . . . [such that] a mutual, final and definite award upon the subject matter was not made." 9 U.S.C. § 10 (West 2013). The Second Circuit is "highly deferential to arbitrators." *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC,* 648 F.3d 68, 78 (2d Cir. 2011); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir. 2009). Awards are confirmed so long as there is "a barely colorable justification for the outcome reached." *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir. 1978).

Guerrero argues that the arbitration award is biased and corrupt because: (1) the arbitrator relied on Gomez's testimony, which Guerrero states was false, (Sec. Am. Compl. at 7); (2) the arbitrator failed to follow arbitration procedure when he did not allow Guerrero to present all of his witnesses, (*id.* at 27); (3) the Union attorney was familiar with the arbitrator, or had spoken with him on prior occasions, which resulted in corruption of the award, (Fourth Compl. Aff. at ¶¶ 15, 16); and (4) the arbitrator relied on a misstatement of fact in rendering the award, (Sec. Am. Compl. at 7, 8).

Guerrero has failed to offer a sufficient factual basis to establish any improper action by the arbitrator. First, Guerrero's claim of false testimony by Gomez is unsupported by any

9

objective evidence. FJC called Gomez as a witness to provide her account of the incident for which Guerrero was fired. (Am. Compl. at 18.) Guerrero alleges that Gomez's testimony was false because he did not "swing at" or curse at Vasquez as Gomez reported to the arbitrator. (Sec. Am. Compl. at 7.) The account Gomez gave to the arbitrator, however, substantially matches the account she gave in her incident report. (*See* Am. Compl. at 18 and Am. Compl. at 42.) The arbitrator found Gomez's testimony to be clear, consistent, and credible, and substantiated in part by Amoaka's testimony. (Am. Compl. at 21, 22.) There is no indication that the arbitrator relied upon or was given false evidence by Gomez. In any case, even if the arbitrator had mistakenly relied on false facts provided by Gomez, that would not be a ground upon which the arbitration award should be vacated. *Refino v. Feuer Transp. Inc.*, 480 F. Supp 562, 565 (1979) (holding that mistakes of fact, errors of law, inadequate reasoning or even arbitrary determinations are not grounds to vacate listed in 9 U.S.C. §10). Thus, Guerrero has not proven that the arbitration award should be vacated on this ground.

Guerrero's second claim of error is that, by only considering Gomez's and Amoaka's testimony, without any of the other eyewitnesses' accounts, the award was "misinformed." (Sec. Am. Compl. at 8.) The additional witnesses identified by Guerrero, however, were not excluded by the arbitrator. (*Id.* at 4.) They were not brought forth to testify during the arbitration. (*Id.*) The arbitrator did not engage in misconduct by only relying on the testimony of those witnesses before him, nor did he refuse to hear any pertinent or material evidence. *Rai v. Barclays Capital, Inc.*, 739 F. Supp. 2d 364 (S.D.N.Y. 2010) (finding the arbitrator did not engage in misconduct as he did not prevent a witness from testifying and petitioner had not called the witness to testify).

Guerrero's third claim of error is that the award against him is biased because the Union

attorney and the arbitrator were familiar with one another and had prior contact with each other. Additionally, Guerrero states that there were discussions between the arbitrator and the parties, held without his consent, discussing "how they were not going to follow the arbitration process." (Fourth Compl., Aff. ¶15.)  Guerrero's counsel's familiarity with the arbitrator, however, is insufficient to establish that the arbitrator or the proceedings were partial or corrupt. *Screen Actors Guild, Inc. v. Magellan Pictures, Inc.*, No. 89 Civ. 4404 (KMW), 1989 WL 120199 at *2 (S.D.N.Y. 1989) (holding the arbitrator's award need not be vacated because the arbitrator was on a first name basis with plaintiff's counsel).  Guerrero's claim of familiarity is insufficient to establish any impropriety or bias.

Guerrero's final claim of error is that the arbitrator relied on a misstatement of fact in rendering the award. (Sec. Am. Compl. at 7, 8.)  The award states that Gomez was "the only eyewitness to the events which transpired on June 13, 2011." (Am. Compl. at 21.)  Guerrero claims this statement is false and misleading as there were many other witnesses to the incident. (Sec. Am. Compl. at 10.)  However, "courts are not authorized to reconsider the merits of an [arbitrator's] award even though the parties may allege that the award rests on errors of fact." *United Paper Workers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (holding that the Court of Appeals could not overturn the arbitrator's award based on faulty fact-finding). Thus, even if the arbitrator's statement is not accurate, it is an insufficient basis on which to vacate the arbitration award. *Id.*

Accordingly, the Court finds that Guerrero has not stated any grounds upon which this Court may vacate the arbitrator's award.

**D. The Arbitration Award Should Be Confirmed**

Section 9 of the FAA requires that a court, upon timely application by any party "must grant an order to confirm an arbitration award, unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of the FAA." 9 U.S.C. § 9 (West 2013). As discussed earlier, Section 10 of the FAA allows courts to vacate an award procured by corruption, fraud or undue means, misconduct, or an excess use of power by an arbitrator. 9 U.S.C. § 10. Section 11 provides that an award may be modified or corrected only where: (1) there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (2) the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or (3) the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11 (West 2013).

FJC and the Union meet the requirements set forth in Section 9 of the FAA: (1) the CBA provides that arbitration is the sole and exclusive method of resolving disputes, and is binding upon the parties; (2) the Arbitration Award was rendered on April 2, 2012, within the one-year limitation set forth in the FAA; and (3) the award has not been "vacated, modified, or corrected as prescribed by sections 10 and 11 of [the FAA]." 9 U.S.C. §§10, 11 (West 2013). As this Court finds no grounds upon which to vacate or modify the arbitration award, I recommend that the arbitration award be **CONFIRMED**.

**E. Hybrid Claim For Breach of the Duty of Fair Representation and Breach of the CBA Claim**

An employee may bring a hybrid claim of both breach of the CBA by an employer and breach of duty of fair representation by her Union. *Chauffeurs, Teamsters & Helpers, Local 391*

*v. Terry*, 494 U.S. 558, 564 (1990) (citing *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164-65 (1983)). "The plaintiff must prove fault by both [the union and employer] in order to succeed against either." *Russo v. 210 Riverside Tenants, Inc.*, No. 10 Civ. 914 DLC, 2011 WL 166928 at *3 (S.D.N.Y. 2011) (quoting *Carrion v. Enter Ass'n Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000)).

### 1. Union's Duty of Fair Representation

Guerrero alleges that the Union violated its duty of fair representation by handling his grievance in a perfunctory manner and failing to investigate his claims in good faith. (Compl. at 3; Am. Compl. at 3.) "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Marquez v. Screen Actors Guild*, 525 U.S. 33, 45 (1998). Proof of "mere negligence" or "errors of judgment" by the union are insufficient to prove a breach of the duty of fair representation. *Cook v. Pan American Work Airways, Inc.*, 771 F.2d 635, 645 (2d Cir. 1985). "To succeed [in a suit for violation of the duty of fair representation] under Section 301 [of the LMRA, 29 U.S.C. § 185], an employee must show 'substantial evidence of fraud, deceitful action or dishonest conduct,'. . . 'hostile discrimination,'. . . arbitrariness or irrationality, . . .or conduct in bad faith" *Id*. Further, the union's conduct must have "seriously undermine[d] the arbitral process." *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). "As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally found decisions which operate to their particular disadvantage." *Cook*, 771 F.2d at 645 (quoting *Capobianco v. Brink's Inc.*, 543 F. Supp. 971, 975 (E.D.N.Y. 1982)).

Guerrero states that he told the Union attorney that Amoaka and Graham would confirm his account of the incident for which he was fired if they were called to testify at the arbitration.

(Am. Compl. at 4.) At Guerrero's unemployment benefits appeal, both Amoaka and Graham

testified on Guerrero's behalf and the ALJ found that Guerrero's "committed no act of

misconduct that resulted in his discharge." (*Id.* at 51.) Guerrero believes that if the Union

attorney had secured the testimony of these supportive witnesses for the arbitration that he would

have succeeded in proving he was not fired for just cause. (*Id.* at 27.)

Although the Union attorney's failure to procure a witness "might conceivably have

affected the outcome of the arbitration, [it does not] rise to the level of bad faith and

arbitrariness." *Barr v. United Parcel Service, Inc.*, 868 F.2d 39, 43 (2d Cir. 1989). Thus, the

failure by the Union attorney to secure Graham as a witness was not so egregious as to amount to

an act in bad faith or a failure to adequately represent Guerrero. *See id.* Moreover, Amoaka

made the decision to testify on behalf of FJC during the arbitration, and therefore, could not have

served as a supportive witness to Guerrero.

Additionally, Guerrero alleges that the Union attorney did not investigate his claims in

good faith. (Am. Compl. at 15.) The Union attorney and Guerrero met in March of 2012, to

discuss the arbitration and the facts of the incident for which Guerrero was fired. (Am. Compl.

at 27.) They were in communication regarding the arbitration on at least two subsequent

occasions. (*Id.* at 28.) The attorney appeared at the arbitration and mounted a defense on

Guerrero's behalf. (*Id.* at 29.) The Union attorney attempted to contact Graham on at least two

occasions. (Am. Compl. at 28.) Guerrero was aware that the attorney was having difficulty

reaching Graham. (*Id.* at 28.) Guerrero suspected that Graham was too "scarred to come in" and

made the attorney aware of such fear. *Id.* Based on these facts, the actions of the Union attorney

did not amount to "conduct and omissions 'so egregious, so far short of minimum standards of

fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.'" *Barr*,

14

868 F.2d at 43 (quoting *N.L.R.B. v. Local 282, International Brotherhood of Teamsters*, 740 F.2d 141, 147 (2d Cir. 1984)). Therefore, Guerrero makes no showing of a failure by the Union to meet its duty to uphold minimum standards of fairness to the employee. *Barr*, 868 F.2d at 43.

### 2. Violation of Collective Bargaining Agreement

An arbitration award should be upheld as long as it "draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960). The CBA between the Union and FJC states that the parties have agreed in advance to be bound by the arbitrator's decision in resolving a grievance, and that the arbitrator's award "shall be final and binding upon the parties and the employee(s) involved." (FJC Mot. To Dismiss, Ex. CBA ¶ 26.9.) Further, the CBA states, "[e]mployees may not be discharged except for just cause. The Employer shall give the Union a written statement of the general grounds for discharge or suspension within a reasonable time." (*Id.* at ¶ 4.1.)

Guerrero alleges that FJC violated the CBA under Section 301 of the LMRA by discharging him without cause. 29 U.S.C. § 185 (West 2013). Here, FJC provided the Union with a statement that Guerrero was removed from his position and was banned from all HRA locations because although "Guerrero was instructed to remove himself from confrontations that could become physical and to call his supervisor, he failed to do either" when dealing with Vasquez. (Am. Compl. at 37.) Despite Guerrero's contention that he properly called his supervisor on a radio during the incident and he exerted physical force only when he was attacked by Vasquez, (*id.* at 7, 20, 26, 44), the arbitrator determined that FJC had just cause to discharge Guerrero, (Am. Compl. at 21). The arbitrator also provided a letter stating the grounds for dismissal in writing in accordance with the CBA. (Sec. Am. Compl. at 60.) Specifically, the arbitrator's decision was based on Gomez's testimony recounting the incident which the

15

arbitrator deemed to be clear, consistent and credible. (*Id.* at 21-22.) Additionally, the arbitrator found Gomez's testimony to be supported by Amoaka's testimony. (*Id.*)

As the arbitrator's decision remains binding upon the parties, (*id.* at 23), this Court finds that FJC did not violate the CBA when it terminated Guerrero's employment for his involvement the June 13, 2011 incident.

## F. Guerrero's Fourth Complaint Alleging Malpractice against the Union is Both Barred by the Statute of Limitations and Duplicative of His Hybrid Claims Raised Against the Union and FJC In His 2012 Suit

There is a six month statute of limitations for hybrid claims arising under Section 301 of the LMRA. *DelCostello*, 462 U.S. at 155; 29 U.S.C. §160(b). The statute of limitations begins once the cause of action has accrued, namely, when the plaintiff could have first successfully maintained a suit based on that cause of action. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989). Here, Guerrero received the arbitrator's award on April 24, 2012. (Am. Compl. at 29.) His Fourth Complaint was filed on February 4, 2013. (Fourth Compl. at 2.) As more than six months had elapsed when Guerrero received the April 24 arbitration decision, his Fourth Complaint is barred by the six month statute of limitations. Even if Guerrero's Fourth Complaint were not barred by the statute of limitations, the claims raised therein are duplicative of the hybrid claims raised against the Union and FJC and are without merit, for the reasons discussed above. "A district court may stay or dismiss a suit that is duplicative of another federal suit." *Curtis v. Citibank*, 226 F.3d 133, 138 (2d Cir. 2000). The court has discretion when considering duplicative claims to "stay the second suit, dismiss it without prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." *Id.* at 138-39.

While Guerrero formally only names the Union in his Fourth Complaint, the included affidavit alleges misconduct by both the arbitrator and FJC's attorney. (Fourth Compl., Aff. ¶

4.)   Further, the allegations made and the evidence submitted in the Fourth Complaint are nearly identical to his claims against the Union and FJC. (*See* Compl.; Am. Compl.; Sec. Am. Compl.) Evidence already submitted to this Court and included in Guerrero's Fourth Complaint include: an incident report filed by Amoaka and Chavis; Chavis's complaint against Guerrero for the incident; written accounts of the incident by Gomez, Graham, Miller and Charmelle Tate ("Tate"), an HRA employee; Guerrero's 6/13/2011 affidavit; HRA Guard Ban Recommendation form for Guerrero; a letter from FJC discharging Guerrero; Guerrero's affidavit from his previous suit in the Supreme Court of the State of New York; NY Penal Code § 35.15 and other definitions; and an affidavit from Kyle Jiggetts. (Am. Compl. at 35-38, 40-43, 45, 46, 48, 49; Sec. Am. Compl. at 12, 32, 33.)

The only new document attached to the Fourth Complaint is an affidavit by Guerrero in support of the complaint.   Guerrero's affidavit echoes the facts stated and the allegations made in his affidavits previously submitted to this Court. (Fourth Compl. at 7.)   Guerrero includes a new allegations in his most recent affidavit that claims that the Union "made sure that [his] witnesses did not appear at the arbitration hearing on purpose."   Guerrero, however, repeats his primary claim that the Union attorney performed in a perfunctory or discriminatory manner. (Fourth Compl. at 2; Sec. Am. Compl. at 3.)

As Guerrero's Fourth Complaint is untimely, and is otherwise duplicative of his 2012 action against the Union and FJC, the Court recommends that Guerrero's Fourth Complaint be **DISMISSED**.

## IV. CONCLUSION

In conclusion, I recommend that: FJC's motion to confirm the arbitrator's award and motion to dismiss the Amended Complaint be **GRANTED**; the Union's motion to dismiss the First Amended Complaint be **GRANTED**; Guerrero's complaint requesting that this Court vacate the arbitration award be **DENIED** and, that the case be **DISMISSED with prejudice**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, Room 725. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of appeals. *See Thomas v. Arn,*474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989)(*per curiam*); 28 U.S.C. § 636(b)(1)(West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

**DATED: August 19, 2013**
**New York, New York**

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

18

Copies of this Report and Recommendation were sent to:

*Pro Se* Plaintiff
Rashaad Donnell Guerrero
1 Metropolitan Oval, Apt. 11-F
Bronx, NY 10462

Defendants
Brent Garren (5585)
Deputy General Counsel
Service Employees International Union,
Local 32BJ
25 West 18th Street
New York, New York 10011
*Attorney for Service Employees International Union, Local 32BJ*

Scott A. Weiss
Weiss & Weiss LLC
2000 Post Road, Suite LL106
Fairfeild, Connecticut 06430
*Attorney for FJC Security Services*, Inc.

Clifford J. Ingber, Esq., Of Counsel
Ingber Law Firm, PLLC
6 Stallion Trail
Greenwich, Connecticut 06831
*Attorney for FJC Security Services*, Inc.

19